THOMPSON, J.
On May 12, 1921, George S. Shields executed a mortgage on the land described in plaintiff’s petition with other property, in plaintiff’s fhvor, to secure a note for some twenty-odd thousand dollars. The act was authentic in form, contained the usual nonalienation clause, and was seasonably recorded in the mortgage records. Shields had, prior to said mortgage, granted an oil and gas lease on the land in favor of the defendant Head. The oil lease, however, was not recorded until long after the execution and registry of plaintiff’s mortgage.
At the maturity of the mortgage debt the plaintiff proceeded via ordinaria' to foreclose its mortgage. After pleading unsuccessfully various exceptions and defenses, Shields finally went into voluntary bankruptcy, and, through counsel on motion in the state court, 'arrested further proceedings in the foreclosure of the mortgage.
The plaintiff then abandoned its action in the state court and made proof of its debt and mortgage in the bankruptcy proceeding.
On application- of the trustee in bankruptcy and with the unanimous consent of all of the creditors of Shields, a sale of all of the property and assets of the bankrupt was ordered for the purpose of paying the debts. The sale was ordered to be made for cash to the last and highest bidder, and free of all liens and incumbrances whatsoever. The order was signed March 28, 1922, and directed the sale to be made on Saturday, April 8, 1922.
At this sale the plaintiff became the purchaser of the land, and the sale was confirmed by the federal court in the bankruptcy proceeding.
The plaintiff thereupon instituted the present suit, the purpose of which is to haVe the oil and gas lease made by Shields to Head canceled and erased from the public records. The suit was met by an exception of no cause of action founded upon five specifications, as follows:
(1) That it is not alleged that either the plaintiff or defendant is in possession of the property so as to place this suit in the class of any real action known to the law of Louisiana.
(2) That tlie petition affirmatively shows that George S. Shields sold the oil, gas, and minerals in and under the land long prior to the mortgage of plaintiff and the adjudication in bankruptcy, and that the sale was recorded prior to the adjudication in bankruptcy; and under the law only such title as Shields had to the property passed to the trustee and could be legally sold by him without first having had said sale set aside as being in fraud" of creditors.
(3) That the trustee in bankruptcy has no legal right to sell, in any manner, or to recover in a suit at law or in equity, any property sold by the bankrupt and in the hands of a bona fide purchaser for value prior to the adjudication.
(4) That the petition shows that the property was sold to plaintiff without 30 days’ advertisement as required by the laws of the United States and the laws of this state; that said sale is nothing more than a private sale, and is an absolute nullity in so far as it may attempt to convey the oil, gas, and minerals previously sold, or affect the title of, defendants, acquired from the bankrupt prior to the adjudication.
(5) Plaintiff does not allege that it has not been paid or has not received its debt in full from the proceeds of thp estate of the bankrupt, and alleges no injury because of the prior sale of the property by the bankrupt! to the defendant.
The exception of no cause of action was *314 sustained, the plaintiff’s suit dismissed, and it has appealed.
Opinion.
 1. In answer to this contention, it may be said that the plaintiff’s suit is neither petitory nor possessory. Nor is it an action in jactitation nor an action to try title under Act 30 of 1908. But because the action does not fall under either class designated, it does not follow that the petition fails to disclose a cause of action for want of an allegation in regard to possession. It is true the petition alleges that defendants are slandering plaintiff’s title by claiming an oil lease on the plaintiff’s land; but the facts as set out in detail and the prayer of the petition do not make the action one of jactitation, strictly speaking.
The relief sought is, not that the defendants be ordered to disclaim title or to make good the asserted title — the peculiar characteristic of an action in slander of title—but the prayer of the petition, responsive to the allegations of the petition, is that the alleged oil and gas lease be ordered canceled and erased from the public records.
Por the purpose of this phase of the exception, the plaintiff must be regarded as the owner and .possessor of the land, and there could be no possession of the land in the defendant under the oil lease separate and distinct from and to the exclusion of the owner of the land.
But even where. the plaintiff, claiming ownership, is not in actual possession of the property, he may yet have his action against a party out of possession for the cancellation of a recorded deed and to remove a cloud on his title.,
In Atchafalaya Land Co. v. Brownell-Drews Lumber Co., 130 La. 657, 58 South. 500, Ann. Cas. 19130, 1358, the defendant interposed the special defense that; plaintiff had not corporeal possession and therefore could not maintain the action of slander of title, and the court held:
“No doubt, the jactitation action proper which is a suit by which the plaintiff asks that the defendant be compelled to institute the petitory action against him, can be brought only by a party in possession; for the petitory action is that action which is brought against the claimant in possession, and hence a claimant'out of possession cannot require that the action be brought against him, but from this it does.not follow that a party claiming to be owner by title dyly recorded, but who is not in actual possession, may not bring a' suit against another party equally out of possession to procure the cancellation of a title which that other party may have caused to be recorded against the property. If he could not, he would be remediless.”
See also, Lacroix v. Villio, 123 La. 459, 49 South. 20.
2. The second ground of the exception is that the mineral rights formed no part of the assets of the bankrupt’s estate, and were not surrendered into bankruptcy because a sale of such mineral rights had been recorded prior to the adjudication in bankruptcy.
The mineral lease was recorded just two days before the adjudication in bankruptcy, but the record fails to show the date on which the petition was filed and surrender in bankruptcy was made by Shields. But conceding that the surrender and adjudication were made on the same day, the registry of the oil lease quoad the plaintiff’s mortgage was null and void and without effect, and conferred no rights on the lessee to the prejudice of the plaintiff’s mortgage, because of the prior, registry of the plaintiff’s mortgage and because of the nonalienation clause contained in the act of mortgage.
But the fundamental error upon which this contention is predicated is in assuming that there is or can be any title or ownership in or to oil and gas beneath the surface of the soil independent, separate, and distinct *316 from the land upon which the oil lease is granted.
In the case of Frost-Johnson Lumber Co. v. Salling’s Heirs, 150 La. 855, 91 South. 207, on the second rehearing, this court said this court for the ninth time has held that oil and gas in place are not subject to absolute ownership as specific things apart from the soil of which they form part, and that a grant or reservation of such oil and gas carried only, the right to extract such minerals from the soil. See the other eight cases cited in the opinion.
In the above-mentioned case it was distinctly held that oil and gas beneath the surface are not subject to ownership, as corporeal property, and a contract selling them, or for sale of land reserving them, conveys or reserves an incorporeal right—a real right or servitude.
And again in Nabors Oil & Gas Co. v. Louisiana Oil & Refining Co., 151 La. 361, 91 South. 765, this court for the tenth time said that a sale of oil and gas does not convey the ownership of the oil and gas itself as physical or corporeal property, but only a real right or servitude to explore therefor. In the above-cited case it was also said:
“ * * * An ordinary oil and gas lease, though containing elements of a sale, is sufjL ciently a lease to bring it within the rule that the lessee, enjoying undisturbed possession, acquired under such contract, cannot deny or contest the title or right of possession of his lessor. * * * His possession is that of his lessor, and he cannot change its character or his quality with respect thereto.”
And again in Lieber v. Ouachita Natural Gas & Oil Co., 153 La. 162, 95 South. 538, the court for the eleventh time said:
“In order to ascertain its nature, it may be said that, while it purports 'on its face to be a sale of the.oil and gas in and under the land, and is. expressly, by a stipulation in it, declared to be such, yet the law regards it as a mere conveyance or grant of the right to mine for those minerals, and to reduce them to possession and ownership, and not as a sale of them in their natural state, beneath the surface.”
And again in Wetherbee v. Railroad Lands Co., 153 La. 1060, 97 South. 40, the court for the twelfth time said:
“The fact, if true, that oil and gas in the soil are not fugacious to the extent formerly supposed does not change the rules that they are not subject to absolute ownership apart from the soil, and that grant or -reservation thereof carries only right to extract them and is a servitude.”
From all of which it indubitably follows that the only right Which was conveyed by Shields to Head under the oil lease was a right of servitude (an incorporeal right), a real right on the land, a right to extract the oil and utilize the gas from the land, and when Shields surrendered the land in bankruptcy, this real right (this servitude) went with the land into the possession of the trustee in bankruptcy and likewise the possession of the land, for as we have already seen (Nabors Oil & Gas Co. v. Louisiana Oil & Refining Co., supra), the lessee under an oil and gas lease cannot deny or contest the right of possession of his lessor.
3. The third ground of exception is that the trustee in bankruptcy has no legal-right to sell in any manner any property sold by the bankrupt and in the possession of a bona fide purchaser.
The error here into which the pleader again has fallen is that there can be a separate and distinct ownership and possession of the oil and minerals from the land which we have already discussed. But we may add that the able counsel of defendant overlooks the fact that the amendatory bankruptcy act of June 25, 1910 (U. S. Comp. St. § 9631) vests the trustee with all of the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings on property in the custody of the bankrupt court. See Collier on Bankruptcy 1912, p. 999.
*318 What were then the rights, remedies, and powers of the Exchange National Bank with respect to the land in question before the surrender in bankruptcy? Clearly the right, remedy, and power was to cause the land to be sold free from the oil lease which had been recorded after the plaintiff’s mortgage. No one will for a moment question the fact that the bank could, in foreclosing its mortgage, have bought the land in free of the incumbrance or servitude produced by the recordation of the oil lease.
That is precisely what was done in the bankrupt court. The trustee applied for and obtained an order for the sale of the land free of all liens and incumbrances, and the sale was so made. The jurisdiction and power of the bankrupt court to sell the land is unquestioned, and the sale made carried with it all the legal effects which would have attached had the sale been made under the state laws in foreclosure of the plaintiff’s mortgage.
4. The fourth ground of exception is that the land was sold without the usual 30 days’ advertisement, and therefore amounts to nothing more than a private sale. A sufficient answer is that the bankrupt court was clothed with jurisdiction and power to order a private sale of the property, and this carried with it the power to order the sale to be made with a publicity in a newspaper for less than 30 days. The order of the court is valid on its face, the court had jurisdiction of the subject-matter, and it must be presumed that the necessity for quick sale existed as stated in the application for and order of sale.
Counsel refer to Act of Congress of March 3, 1893, 27 Stat. 751; U. S. Compiled Stat. § 1642, providing that no sale of real estate, under any order, judgment, or decree of any United States court shall be had without publication of notices of such proposed sale being ordered and had once a week for at least four weeks prior to such sale. This law was enacted prior to the Bankrupt Law of 1898 (U. S. Comp. St. §§ 9585-9656), and as the latter law deals with a special subject-matter the former must give way to its provisions.
But the contention of counsel is effectually answered by the Supreme Court of the United States in Robertson v. Howard, 229 U. S. 254, 33 Sup. Ct. 854, 57 L. Ed. 1174, wherein Mr. Chief Justice White said:
“In view of the fact that the Bankruptcy Act was enacted long after the passage of the statute of 1893, and of the complete right of administration which the Bankruptcy Act confers over the property, real and personal, of the bankrupt estate, we think it follows that the authority to realize, by way of sale, on the property of the bankrupt estate, cannot be held to be limited by the provisions of the act of 1893.
“Indeed, this conclusion is additionally demonstrated by the fact that as recognized by No. 18 of the general orders in bankruptcy, in disposing by sale of the property of the bankrupt, a bankruptcy court, as to both real and personal property, may, if reason for so doing exists, direct a private sale to be made.”
5. The last ground of complaint is that the petition. does not allege tha^ the plaintiff has not been paid its debt in full from the proceeds of the estate of the bankrupt, and does not allege any injury because of the prior sale of the property by the bankrupt to defendants. As this part of the exception is not discussed in defendants’ brief, we assume that the same has been abandoned. At all events, there is no merit in it.
For the reasons assigned the judgment appealed from is annulled and reversed, and it is now ordered arid decreed that the exception of no cause of action be overruled, and that the case be remanded to the district court to be proceeded with according to the views herein expressed and according to law. The appellees to pay the costs of this appeal and all other costs to abide the final disposal of the case.
ST. PAUL, J., dissents.