(133 So. 157)

**ARENT v. HUNTER et al.**
No. 30215.

Aug. 7, 1930.

On Rehearing, March 2, 1931.

Dart & Dart and H. Grady Price, all of New Orleans, and Shotwell & Brown, of Monroe, for appellant Interstate Natural Gas Co.

Charles H. Blish, of Shreveport, for appellant Texas Co.

Hudson, Potts, Bernstein & Sholars, of Monroe, for appellants Hunter & McCormick.

George Gunby, of Monroe, for appellee.

Oliver & Digby, W. M. Phillips, Wilkinson, Lewis, Wilkinson & Burford, R. L. Benoit, J. S. Atkinson, Pugh, Grimmet & Boatner, Thigpen, Herold & Cousin, T. M. Milling, and Blanchard, Goldstein, Walker & O'Quin, all of Shreveport, Milling, Godchaux, Saal, & Milling, of New Orleans, for amicus curiæ.

Theus, Grisham, Davis & Leigh, of Monroe, for Industrial Gas Company as amicus curiæ.

BRUNOT, J.

On February 6, 1917, S. D. Hunter and W. B. McCormick acquired from Union National Bank, of Monroe, La., 2,019.57 acres of land situated in Ouachita parish, La., known as the Seale Plantation.

On July 14, 1917, Hunter and McCormick granted to Producers' Oil Company an oil, gas, sulphur, and mineral lease on five noncontiguous parcels of said plantation, the total area burdened with the lease being 929.50 acres.

On October 24, 1917, Hunter and McCormick sold 1,916.73 acres of the property to H. H. Shackelford, F. S. Brown, and John F. Irvine, reserving, however, in the deed, the minerals, oil, and gas under the surface of the land together with certain rights thereon for mining and development purposes. The acreage conveyed by this deed included the five tracts described in the grant to Producers' Oil Company.

On May 19, 1919, Shackelford, Brown, and Irvine, sold the property, subject to all the rights, etc., reserved in the deed from their vendors, to E. I. Coleman.

On June 2, 1919, Coleman sold the property, exclusive of the reserved mineral, oil, gas, and rights upon the land, to the plaintiff in this suit.

The Producers' Oil Company assigned its mineral oil and gas lease, affecting the five noncontiguous parcels of land, mentioned supra, to the Texas Company, a Texas corporation, which corporation assigned the lease, with all of its rights thereunder, to the Interstate Natural Gas Company, Inc., of Delaware.

In addition to the ownership of 1,916.73 acres of the Seale Plantation, exclusive of the minerals, oil, and gas on and under the sur-

face of the soil, plaintiff, subsequent to the date of his purchase of the land, alone, acquired the minerals, oil, and gas beneath the surface of parcels of his land other than the five tracts affected by the lease granted to the Producers' Oil Company. Plaintiff sold a half interest in these minerals, etc., but, by amicable partition with his co-owner, he reacquired the sole ownership of the oil, gas, and minerals under the surface of one-half of said lands. These transactions have no bearing upon the issues of the case, but are mentioned because they appear in the transcript.

It is admitted that the Union National Bank had, and conveyed to Hunter and McCormick, a perfectly good and valid title to the property, and the record does not disclose that the validity of any subsequent transfer of the land, including the deed to the plaintiff, is questioned. It appears that the plaintiff went into actual possession of all the property he acquired under his deed from E. I. Coleman, and it is admitted that at the time of the filing of this suit and for more than one year previous thereto he and Guy O. Barr, respectively, were in the actual possession of the parcels of the property described in articles 1 and 3 of plaintiff's petition.

The plaintiff alleges that he is the owner, under a title translative of the property, of the land described in his petition, and of the gas, oil, and minerals beneath the surface thereof; that the defendants are slandering his title by claiming to be the owners and lessees, respectively, of the oil, gas, and minerals beneath the surface of certain parcels of his land, and by the recordation of six, specifically described, instruments in the office of the clerk of court and ex officio recorder for the parish of Ouachita, state of Louisiana. The prescription of ten years liberandi causa is invoked in the petition as against the defendants' asserted oil, gas, sulphur, and mineral rights under the reservation in the deed from Hunter and McCormick to Shackelford, Brown, and Irvine, and under the lease from Hunter and McCormick to Producers' Oil Company, and the two respective assignments and amendments of that lease.

During the progress of the trial the prescription of ten years liberandi causa was reiterated in a separate, special, amplified plea.

S. D. Hunter, W. B. McCormick, Producers' Oil Company, Texas Company, and Interstate Natural Gas Company, Inc., were cited as defendants. Hunter and McCormick, jointly, Texas Company and Interstate Natural Gas Company, Inc., respectively, filed answers, in which they denied the plaintiff's ownership and possession of the land and oil, gas, and mineral rights described in the petition; denied slander of plaintiff's title; denied that prescription had run against their mineral rights; alleged the interruption of prescription by the timely drilling of a producing gas well on the land, and by recitals in the six recorded instruments mentioned supra; and converted the suit into a petitory action by alleging ownership of the property sued for. Hunter and McCormick plead estoppel to plaintiff's demands. This plea is based upon plaintiff's alleged acknowledgment of these pleaders servitude upon the land and their title to the oil, gas, and minerals herein sued for. The case was heard upon these issues and judgment was rendered in favor of the plaintiff overruling Hunter and McCormick's plea of estoppel; maintaining plaintiff's plea of prescription liberandi causa except as to the particular parcel of land on which the Texas Company drilled a producing gas well; ordering the cancellation of the six recorded instruments mentioned supra, in so far as they affect the lands described in the judg-

ment, other than the parcel on which the Texas Company drilled a producing gas well; and decreeing plaintiff to be the owner of the oil, gas, and minerals under said lands. All of the defendants who answered the petition appealed. The plaintiff has answered the appeal and prays that the judgment be amended so as to reserve in favor of the Texas Company only ten acres, or, at most, only one hundred and sixty acres of land surrounding the producing well drilled by that company, and, as thus amended, that it be affirmed.

At the outset we will say that the right to extract minerals from the ground is a real right or servitude which is lost by non-use for ten consecutive years. Keebler v. Seubert, 167 La. 901, 120 So. 591; Lee v. Giauque, 154 La. 491, 97 So. 669.

The trial judge correctly found that plaintiff's alleged acknowledgments of a servitude in favor of Hunter and McCormick on portions of the Seale Plantation other than the land leased to Producers' Oil Company was not an acknowledgment of a servitude or right, in their favor, upon that particular land, or of their ownership of the oil, gas, and minerals beneath its surface, and, as this servitude and the ownership of the oil, gas, and minerals under this' land are the rights and property plaintiff is suing for herein, he properly overruled the defendants' plea of estoppel.

"An estoppel must be certain to every intent, and is not to be taken by argument or inference." Leeds & Co. v. Hardy, 44 La. Ann. 556, 11 So. 1, 2.

"Estoppel is not favored in law, and should not be permitted, except in clear cases." Hornor v. McDonald, 52 La. Ann. 396, 27 So. 91, 95.

In disposing of Hunter and McCormick's claim of ownership of the oil, gas, and minerals involved in this suit the trial judge says:

"They parted with title to the minerals under the land involved in this suit prior to their sale of the land to Shackelford, et als., and have never reacquired title in any manner whatever. At least it has not been shown in this case."

In sustaining plaintiff's ownership of the minerals under the land he sold to Guy O. Barr, the trial judge says:

"Plaintiff claims some mineral rights in and under land which he does not own. At one time he owned the land but sold it to Barr and subsequently purchased the mineral rights of Barr. This land is a portion of the same land leased by Hunter and McCormick to Producers Oil Company already discussed herein, and by reason of his acquisition of Barr's rights and by reason of the defendants, as plaintiffs in a petitory action, having failed to establish their title, plaintiff's demands should be sustained."

It is admitted that from September 10, 1917, the date of the lease from Hunter and McCormick to Producers' Oil Company, until the early part of April, 1929, neither did the lessee or either of its assignees make any attempt, whatever, to drill for oil or gas or to exercise any mineral right on the whole or any part of four of the five noncontiguous tracts of land affected by that lease.

It is admitted that in 1918 the Texas Company located, completed, and capped a producing gas well on one of the five noncontiguous tracts of land, containing 300 acres, at a point 100 feet west and 1,197 feet south of the northeast corner of section 45, township 19 north, range 3 east. The trial judge held that the drilling of this well preserved to the lessee and its assignees, under the grant from Hunter and McCormick to Producers' Oil Company, a servitude upon this 300 acres of land. From that grant we excerpt the following clause:

"If, in the exercise of the rights herein granted, the said lessee shall sink a well or shaft and discover oil, gas or sulphur in paying quantities in or under the above described land, then this lease shall remain in full force and effect for ten years from such discovery, and as much longer as oil, gas or sulphur shall be produced therefrom in paying quantities, the lessee shall be exempt from loss or forfeiture of this lease, in whole or in part, except after judicial ascertainment that the lessee has failed to perform its duty and discharge its obligations hereunder, and a reasonable opportunity thereafter to prevent such loss or forfeiture, and *in event of final loss or forfeiture there shall be reserved to the lessee each producing well or mine with ten acres of land surrounding the same to be designated by the lessee.*" (Italics by the court.)

Under the quoted clause of the grant, the land to be reserved to the lessee, if there be a forfeiture of the lease, is limited to ten acres.

It appears that Hunter and McCormick, after their sale of the land to Shackelford, Brown, and Irvine, attempted to amend their grant to Producers' Oil Company. At that time, they had no interest whatever in the land and no act of theirs could enlarge the rights of their lessee and its assignee with respect to the land. We therefore think that the servitude reserved as a result of the completion of a producing gas well by the Texas Company should be limited to ten acres of land surrounding the well to be designated as provided for in the lease. We have disposed of this point apparently out of the proper sequence of the opinion for the reason that it is the only point upon which we disagree with the conclusions of our learned brother of the district court, from whose opinion we quote, with approval, the following:

"If the defendants are plaintiffs' in a petitory action, they must recover on the strength of their own title. Now, on which title do defendants rely? The Texas Company must rely on its title to the oil as assignee of the Producers Oil Company;' Interstate Natural Gas Company must rely on its title to the gas as assignee of the Texas Company. Hunter and McCormick have according to the record, disposed of all of their right, title and interest, with reference to this particular land, except royalties on minerals produced, and the record fails to show any subsequent acquisition by them.

"We are not dealing with separate fees in the same land, on the contrary we are dealing with servitudes. Without trying to explain the law which provides that the owner of an estate encumbered with one servitude may impose on it other servitudes of any kind, provided they do not affect prior rights, we lay down the proposition that two servitudes, * * *, for the purpose of reducing the same mineral to possession, cannot both be exercised at the same time. The one is opposed to the other, * * *. Therefore we cannot agree that the overlapping servitude of Hunter and McCormick was saved from the operation of the law of prescription by use of the servitude in favor of Producers Oil Company by its assignee, the Texas Company."

It is admitted that, except as to the gas well drilled and capped by the Texas Company on section 45, township 19 north, range 3 east, more than ten years elapsed between the date of the grant from Hunter and McCormick to Producers' Oil Company and the date this suit was filed. Defendants claim, however, that prescription was interrupted by certain stipulations in the acts of sale from Hunter and McCormick to Shackelford et als., and from

Coleman to Arent. The trial judge quotes the stipulations and correctly says:

"We consider them as notices on the part of the vendors for the purpose of limiting their warranties. We cannot construe these stipulations as being in themselves reservations of the mineral rights from the new sale; neither can we construe them to be new reservations of the mineral rights, in favor of the party who had already reserved them from the sale of the land. These vendors never did own the mineral rights."

For the reasons stated the judgment is amended by limiting the area of land reserved to the Texas Company or its assignee to ten acres of land surrounding the gas well located 100 feet west and 1,197 feet south of the northeast corner of section 45, township 19 north, range 3 east, Ouachita parish, La., and as thus amended, it is decreed that the judgment be affirmed at appellants' cost.

O'NIELL, C. J., is of the opinion that the judgment of the district court is correct and should be affirmed.

### On Rehearing.

ROGERS, J.

The facts of this case are stated in our original opinion. But for convenience we shall restate them briefly.

On February 6, 1917, Hunter and McCormick purchased the Seale Plantation in the parish of Ouachita. On July 14, 1917, they granted to Producers' Oil Company a mineral lease on five noncontiguous parcels of the plantation, covering an area of 929.50 acres. On October 24, 1917, Hunter and McCormick sold 1,916.73 acres, including the five tracts leased to the Producers' Oil Company, to Shackelford, Brown, and Irvine, reserving in the deed the minerals under the surface of the land. On May 19, 1919, Shackelford, Brown, and Irvine sold the land, subject to the prior mineral reservation in favor of their vendors, to Coleman. On June 2, 1919, Coleman sold the property, subject to the same mineral reservation, to Abe Arent, plaintiff herein.

The lease by Hunter and McCormick to the Producers' Oil Company was assigned on February 21, 1918, to the Texas Company, and on July 30, 1926, was assigned by the Texas Company to Interstate Natural Gas Company, Inc., so far as the gas and gas rights are concerned.

Subsequent to his purchase from Coleman, namely, on June 15, 1923, Arent purchased from Hunter and McCormick the mineral rights on 987.26 acres of the Seale Plantation, which acreage was separate and distinct from the 929.50 acres burdened with the mineral lease of the Producers' Oil Company. On August 4, 1924, Arent sold to S. D. Hunter, individually, an undivided one-half interest in the mineral rights which he had purchased from Hunter and McCormick, and on June 2, 1925, Arent and Hunter effected a partition in kind of these mineral rights, each taking the mineral rights on 493.13 acres of land. On November 25, 1924, Guy O. Barr, who had acquired title to lots 1 and 2 of the Seale Plantation sold to Arent, the mineral rights thereon, part of which were included in the mineral lease of the Producers' Oil Company.

The Texas Company drilled a producing gas well in the southeast corner of the northern 300 acres of section 45, township 19 north, range 3 east, which well was completed on September 28, 1918, and immediately capped. No gas was withdrawn from this well until January 15, 1928, on which date production was begun and continued therefrom up to the

filing of this suit. Subsequent to the filing of the suit four other wells were begun on the other parcels of land covered by the lease to the Producers' Oil Company.

On September 30, 1924, Hunter and McCormick entered into a contract with the Texas Company amending the mineral lease, and on June 6, 1927, Hunter and McCormick entered into an agreement with the Interstate Natural Gas Company, Inc., further amending the lease.

The judgment of the court below was in favor of plaintiff and against all the defendants, maintaining plaintiff's plea of prescription of ten years liberandi causa, ordering the cancellation of the inscriptions of the instruments referred to in the petition, as to all the land involved in the suit except the north 300 acres of section 45, township 19 north, range 3 east, as to which it was ordered that the grant of July 14, 1917, to Producers' Oil Company be recognized subject to the royalties therein provided, which were adjudged to belong to Hunter and McCormick. All the defendants, except the Producers' Oil Company, appealed; and plaintiff answered the appeal praying for an amendment of the judgment.

█ Though the defendants, in argument, question plaintiff's right to institute a jactitation suit, especially with reference to the mineral rights on the Barr tract, no exception or plea to that effect was filed by the defendants. The case was tried and decided on its merits. The issues thus disposed of arose under plaintiff's claim of ownership of mineral rights in lands owned by him and by Guy J. Barr, and his demand that the inscription of certain instruments placed of record by defendants be canceled because they affected and clouded his title, and his claim that such title as defendants might have had in the mineral rights had been lost by the prescription of ten years liberandi causa. And defendants contend that they, and not plaintiff, own the mineral rights referred to, by virtue of the very instruments of which plaintiff complains, and by their claim that the plea of prescription pleaded by plaintiff was interrupted and their rights on the land preserved by the drilling of a gas well and the withdrawing of gas therefrom; and by the reservation and acknowledgment of defendants' mineral rights.

Under these circumstances we do not think defendants are in a position to question either the substance or the form of plaintiff's action.

█ It is a well-settled rule of law, under our jurisprudence, that a grant or reservation of minerals in place is not a grant or reservation of any specific corporeal thing, but only a grant or reservation of the right to extract minerals from the soil and appropriate them when so extracted; that is to say, the grant or reservation of an incorporeal right in the nature of a servitude, and not of a corporeal estate. See Logan v. State Gravel Co., 158 La. 105, 103 So. 526. Thus, a mineral lease conveys to the lessee nothing more than a servitude upon the lands covered thereby. Exchange National Bank v. Head, 155 La. 309, 99 So. 272; Vander Sluys v. Finfrock, 158 La. 175, 103 So. 730; Wiley v. Davis, 164 La. 1090, 115 So. 280. And the reservation by a vendor, in conveying land, of the right to exploit the land for minerals, is the retaining of a servitude on the land for that purpose. La Del Oil Properties v. Magnolia Petroleum Co., 169 La. 1137, 126 So. 684; Keebler v. Seubert, 167 La. 901, 120 So. 591; Lee v. Giauque, 154 La. 491, 97 So. 669; Wemple v. Nabors Oil Co., 154 La. 483, 97 So. 666; Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207, 209.

█ The servitude, whether it be created by a grant or by a reservation, is lost or extin-

guished by nonuser, if not exercised within ten years. Vander Sluys v. Finfrock, supra; Exchange National Bank v. Head, supra; Wemple v. Nabors Oil & Gas Co., supra; Lieber v. Ouachita Natural Gas & Oil Co., 153 La. 160, 95 So., 538; Sellington v. Producers' Oil Co., 152 La. 81, 92 So. 742; Nabors Oil & Gas Co. v. Louisiana Refining Co., 151 La. 361, 91 So. 765; Frost-Johnson Lumber Co. v. Salling's Heirs, supra.

Hence the only right granted by Hunter and McCormick in the lease to the Producers' Oil Company and in the act of sale to Shackelford, Brown, and Irvine, was the right to extract the minerals from the soil and reduce them to possession; which right was subject to extinguishment by the prescription of ten years liberandi causa.

The sole question to be determined, therefore, is whether the prescription pleaded by plaintiff has been interrupted so as to preserve defendants' rights as alleged by them.

Defendants contend there are three reasons why they have not lost their mineral rights by the prescription of ten years liberandi causa, viz.:

First, that the prescription was interrupted by the drilling of the Texas Company's well in section 45, completed and capped on September 28, 1918, from which gas was withdrawn on for the first time on January 15, 1928, whereby the servitude on the entire Seale Plantation, the mineral rights on which were reserved by Hunter and McCormick in the sale to Shackelford, Brown, and Irvine, on October 24, 1917, was exercised.

Second, that the prescription was interrupted by the reservation and exclusion of the minerals and mineral rights and the written acknowledgment of Hunter and McCormick's ownership thereof in the deed whereby Coleman purchased the Seale Plantation from

Shackelford, Brown, and Irvine (the vendees of Hunter and McCormick) and in the deed whereby Coleman sold the property to the plaintiff, Arent.

Third, that the sale by Hunter and McCormick to plaintiff, Arent, of the mineral rights on the 987.26 acres of the Seale Plantation not covered by the mineral lease of the Producers' Oil Company also constituted an acknowledgement on plaintiff's part of defendants' rights to the mineral rights involved herein.

If defendants' theory be correct, which it is not necessary to decide, as to the character of the grant to the Producers' Oil Company and the effect of the reservation of the mineral rights by Hunter and McCormick, and that the drilling of the well by the Texas Company was an exercise of a servitude upon the entire Seale Plantation; nevertheless, plaintiff's demand must prevail as to the four parcels of land covered by the grant to the Producers' Oil Company on which no drilling operations were begun until after the filing of this suit.

It cannot be disputed that the capping on September 28, 1918, of the well which was drilled by the Texas Company on section 45 evidenced an intention to abandon the grant, and constituted the beginning of the running of prescription arising from nonuser.

And while it may be true that the uncapping of the well and the withdrawing of the gas therefrom on January 16, 1928, evidenced the intention on the part of the assignee of the grantee to retain the grant and exercise the servitude, it is certain that there was no attempt to exercise the servitude on any of the tracts except section 45 during the ten-year period ending September 28, 1928.

Long prior to January 16, 1928, the day on which the prescription was interrupt-

ed, Hunter and McCormick had sold or renounced to the plaintiff, Arent, the owner by a prior purchase of the tract of land itself, all the mineral rights on the 987.26 acres of the tract not included in the grant to the Producers' Oil Company, which served to connect the five separate parcels of land covered by the grant. Therefore, when Arent, the owner of the land, also became the owner of the servitude resting thereon, the title of the latter became merged with the title of the former and was extinguished by confusion. Civ. Code, art. 783. When this occurred, Hunter and McCormick owned no mineral rights on the Seale place, except those on the five noncontiguous parcels of land covered by the grant to the Producers' Oil Company. The servitude upon the five noncontiguous parcels of land became five distinct servitudes, and the exercise of the servitude on one of the parcels by the withdrawing of gas from the well drilled thereon some nine years before, did not constitute an exercise of the servitude upon the four noncontiguous parcels. Lee v. Giauque, supra; Keebler v. Seubert, supra; La Del Oil Properties v. Magnolia Petroleum Co., supra.

The plea of estoppel filed by Hunter and McCormick is untenable. It is founded on the elementary principle that one cannot dispute the title under which he claims. But Arent never had any dealings with Hunter and McCormick, or with any one claiming to hold under them, with reference to the lands covered by the grant to the Producers' Oil Company. He is not challenging or impugning the titles of any of the defendants. He established neither the servitude created by the grant to the Producers' Oil Company nor the servitude created by the reservation by Hunter and McCormick. He is not charged as a warranter with the defense of their rights which were created by themselves. Cf. Wilson v. Pierson,

143 La. 287, 78 So. 561. Arent is merely claiming that whatever rights the defendants had or might have had to the lands involved herein have been lost by the prescription of ten years liberandi causa.

In our original opinion we erroneously held that the servitude resulting from the drilling of the well on the tract of land containing 300 acres in section 45, township 19 north, range 3 east, should be limited to the ten acres surrounding the well. We based our ruling in this respect on the forfeiture clause, which is quoted in our original opinion, in the grant from Hunter and McCormick to the Producers' Oil Company. But, on a further examination of the record, we find that no such issue is involved in the case. The object of plaintiff's suit is not to enforce the forfeiture clause of the grant to the Producers' Oil Company, but to obtain a judgment decreeing that the defendants have lost for nonuser for ten years the servitude created by said grant. The sole relief asked by plaintiff is that his plea of prescription of ten years liberandi causa be maintained, and that the original grant of servitude and the other instruments described in his petition be erased from the public records as clouds upon his title.

Our conclusion is that the drilling of the well and the withdrawing of gas therefrom within ten years on the tract of land in section 45 was the fulfillment of the obligation of the grantee as to that particular tract; thereby saving the entire tract of 300 acres from the operation of the prescription invoked by plaintiff.

As to the mineral rights on the lands of Guy O. Barr, which plaintiff claims as owner under a record title, plaintiff has such possession as real rights of that nature are susceptible. It was admitted on the trial of the case that Barr, plaintiff's grantor, was in

actual possession of the lands on the day of the grant to plaintiff and for more than a year prior to the date of the filing of the suit. No possession was alleged or proved by the defendants. And although in their answers defendants deny the slander of title alleged by plaintiff, they, at the same time, set up title in themselves under the very instruments complained of by plaintiff. Hence, having alleged title to the mineral rights as the main defense to this phase of plaintiff's action, they have put in issue the validity of their own title, thereby converting the suit into a petitory action, with the burden of proof on them to establish their title. This burdén plaintiffs have failed to discharge.

For the reasons assigned, our former decree herein is recalled, and it is now ordered that the judgment appealed from be affirmed, at the cost of the appellants.

O'NIELL, C. J., concurs in the result, but does not approve of calling a lease a servitude.