ROGERS, Justice.
 

 This suit was brought by Richard C. Scott against a number of individuals and the Magnolia Petroleum Company, which is made the principal defendant. Plaintiff seeks to be decreed the owner of a one-sixteenth mineral interest, free of a mineral lease held by the petroleum company, in 180 acres of land situated in the Eola Oil Field of the Parish of Avoyelles. The defendants, in addition to the petroleum company, are the record owners of the property and of mineral and royalty rights therein.
 

 The facts are substantially as follows: On August 13, 1935, Oscar Q. Foster, then the owner of the 180-acre tract, granted a mineral lease to Winston L. Stokes. On the same day, but by a subsequent transaction, Foster sold to Stokes a one-fourth mineral interest in the property. The mineral lease was' recorded in the conveyance records of Avoyelles Parish on August
 
 *404
 
 14, 1935, under file number 48,654. Immediately thereafter, the mineral sale to Stokes was recorded in the conveyance records of the parish under file number 48,655.
 

 On August 13, 1935, the day the contract was executed, the mineral lease was assigned by Stokes to the Magnolia Petroleum Company but the assignment was not recorded in the parish records until December 5, 1935. On August 21, 1935, or one week after the mineral lease was recorded, Stokes sold to Richard C. Scott a one-sixteenth mineral interest in the property, that is to say, one-fourth of the rights acquired by the vendor from Oscar Q. Foster. This deed was recorded on August 22, 1935, or about four months prior to the recordation of the assignment of the mineral lease by Stokes to the Magnolia Petroleum Company. The next day, August 23, 1935, Stokes sold to P. F. O’Brien a three-sixteenth interest in the mineral rights, constituting the remainder of the four-sixteenth interest in the mineral rights acquired by Stokes from Foster.
 

 On April 9, 1940, the Magnolia Petroleum Company, assignee of the mineral lease from Stokes, brought in a producing well on the leased property. The petroleum company, after producing and marketing oil from the well, tendered Scott one-sixteenth of the one-eighth royalty due under the terms of the lease, or one-one hundred twenty-eighth of the oil produced and marketed from the well to the date of the tender. The tender was refused by Scott who made claim on the petroleum company for one-sixteenth of all the oil produced and marketed from the property. After the refusal of its tender, the petroleum company held, and has continued to hold for Scott’s account, all further amounts accruing to the one-one hundred twenty-eighth interest of the oil produced and marketed under its lease. This suit is the result of this dispute between Scott and the petroleum company.
 

 After hearing the parties, the court below rendered judgment rejecting the plaintiff’s demands and decreeing plaintiff to be the owner and, as such, entitled to one-sixteenth of one-eighth, or one-one hundred twenty-eighth, of the oil produced on the lfeased property. Plaintiff is appealing from the judgment.
 

 The mineral deed from Foster to Stokes, executed on August 13, 1935, contains the following stipulation: “It is understood between the parties hereto that this sale is made subject to .any valid and duly recorded • oil and gas lease, but covers and includes one-fourth (%) of all the oil royalties and gas rentals or royalties due and to become due under the terms of any such lease.” With the exception of the purchaser’s agreement to accept one-sixteenth instead of one-fourth of all royalties or rentals due or to become due, the same stipulation is embodied in the deed from Stokes to Scott executed on August 21, 1935. Likewise, the sale on August 23, 1935, of the three-sixteenth mineral interest from Stokes to O’Brien was made and accepted subject to any valid and duly recorded lease. Although O’Brien is impleaded as one of the defendants in this case, plaintiff asks for no relief as against him. Nor is there any dispute between
 
 *406
 
 O’Brien and the Magnolia Petroleum Company as to O’Brien’s ownership of a three-sixteenth interest in the mineral rights subject to the lease held by the petroleum company.
 

 Plaintiff’s action, as defined by the averments of his petition, is based on the proposition that by Stokes’ purchase both of a mineral lease and of a fractional mineral right in the same property, the lesser right of lease was merged into, .or confused with, the greater mineral right; that, therefore, by the mere operation of law plaintiff acquired his one-sixteenth mineral interest free of any mineral lease or prior mineral disposition. As shown by the written reasons of the trial judge, this was also the position assumed in argument by the plaintiff in the court below. In this Court plaintiff has apparently shifted his position, for he concedes that he acquired his mineral interest subject to the existing lease, which is now owned by the Magnolia Petroleum Company. But in making the concession, plaintiff insists that the mineral interest was merged into, and became extinguished, by what plaintiff now terms the greater right conferred by the mineral lease.
 

 In view of plaintiff’s apparent inability to take a definite position as to which right was extinguished, if such were the fact, it would be difficult for this Court to determine that question for plaintiff if it were necessary to do so, which it is not.
 

 Defendant’s answer to plaintiff’s contention is twofold, — first, a denial that the doctrine of merger or confusion is applicable to a mineral right and a mineral lease, and second, that even if it be considered that the doctrine is applicable in such a case,’ it can not be considered in this case because the right to invoke it was expressly waived by plaintiff, who elected to purchase mineral rights subject to the mineral lease.
 

 Defendant asserts, in support of the first proposition, that under the provisions of Article 805 of the Civil Code a lessor’s right of servitude can be merged or extinguished only by the right of perfect ownership. Defendant insists that the decisions in Wall v. United States Gas Public Service Co., La.App., 181 So. 562, and Arent v. Hunter, 171 La. 1059, 133 So. 157, cited by plaintiff, are merely applications of the codal article. Under the article and cases cited, defendant argues that in order for confusion to take place, the merged right must consist of a lesser right which is absorbed by the greater right. But it is not important for the Court to determine in this case whether the doctrine of confusion and merger applies to a mineral lease and a mineral right.
 

 Defendant’s second contention, that the right to invoke the doctrine is expressly waived by the plaintiff, is well-founded. By the express language of the deed, plaintiff acquired his one-sixteenth mineral interest subject to the existing mineral lease granted by Foster to Stokes. At the time of the execution of the deed by Stokes to plaintiff, the mineral lease held by Stokes was recorded. Plaintiff not only purchased a one-sixteenth interest in the mineral rights subject to the recorded mineral
 
 *408
 
 lease, but he also agreed with Stokes to receive “one-sixteenth of all the oil royalties and gas rentals or royalties due and to become due under the terms of any such lease.”
 

 Article 11 of the Civil Code provides that in all cases in which it is not expressly or impliedly prohibited, individuals by their contracts may renounce what the law has established in their favor, when such renunciation does not affect the rights of others, and is not contrary to the public good. Plaintiff has not offered any sound reason why the waiver thus established by the codal article should not be applied to the contract under which he purchased his mineral interest from Stokes. The fact that the assignment of the lease by Stokes to the Magnolia Petroleum Company was reporded subsequent to Scott’s purchase of mineral rights from Stokes does not alter 'the situation. The assignment did not evidence the execution of a new lease. It merely evidenced the transfer of the original lease granted by Foster to Stokes, which lease had been of record since August 14, 1935.
 

 When reduced to its simplest terms, under plaintiff’s agreement with Stokes, plaintiff acquired a one-sixteenth mineral interest which during the existence of the prior recorded mineral lease granted by Foster to Stokes was subservient to and limited by the terms of that lease. As compensation, however, plaintiff was entitled to act as a lessor to the extent of demanding that offset wells be drilled and that other duties imposed upon the lessee be complied with. In addition thereto, plaintiff was entitled to receive “one-sixteenth of all the oil royalties and gas rentals or royalties” due or to become due under the lease.
 

 The evidence shows that when plaintifi purchased the one-sixteenth mineral lease from Stokes, he knew and intended that the mineral interest thus acquired should be subject to the existing recorded mineral lease. Plaintiff also knew that the lease was held by the Magnolia Petroleum Company and that that company was developing the leased property. With the exception of filing a copy of his mineral deed with the Magnolia Petroleum Company, plaintiff took no action with respect to his mineral interest until- after the lessee had brought in a producing oil well. At that time plaintiff was told by “several oil men” that there was a “cloud on the title” and he employed an attorney to run the records.
 

 Our conclusion is that the judgment of the district court is correct.
 

 For the reasons assigned, the judgment appealed from is affirmed.