STRICKER LAND & TIMBER CO., Inc., v. HOGUE et al.

HOGUE et al. v. STRICKER LAND & TIMBER CO., Inc.

Civil Actions Nos. 2486, 734.

District Court, W. D. Louisiana, Monroe Division.

Sept. 5, 1945.

Paul G. Borron, of Baton Rouge, La., A. H. Jones, of Woodville, Miss., Hugh Tullis, of Vidalia, La., and W. H. Thompson, of Monroe, La., for Stricker Land & Timber Co.

Engle & Laub and W. A. Geisenberger, all of Natchez, Miss., Sholars & Gunby, of Monroe, La., and R. D. Calhoun, of Vidalia, La., for the Hogues.

DAWKINS, District Judge.

A new trial having been granted in these two cases, which were tried on the same evidence and briefed together, they have again been submitted on the original record alone. The lengthy briefs on rehearing have been devoted entirely to No. 734, filed under the old system as a bill in equity, while No. 2486 was an action at law, although counsel for plaintiffs in the latter have not conceded that the court was correct. However, inasmuch as the court is still of the opinion that Stricker Land and Timber Co. failed to show the requisite possession under codal provisions, the ruling in the possessory action will not be disturbed.

No. 734.

After a further careful study of the bulky record, including pleadings, testimony, maps and other exhibits, I am led to doubt that complete justice can be done by determining title to the property in question in the present state of the record. There seems little doubt but that, in a proper case, the issue of title may be decided in an action such as this, to remove a cloud therefrom. See Exchange Nat. Bank v. Head, 155 La. 309, 99 So. 272, 273; Parish of Jefferson v. Texas Co., 192 La. 934, 189 So. 580. In the first of these cases, the bank held a mortgage on certain real estate, upon which the owner had subsequently given a mineral lease. Foreclosure proceedings were instituted in the state court, whereupon the mortgagor went into bankruptcy. The bank proved its claim therein and abandoned foreclosure in the state court. The property was sold by the trustee free of all liens and other encumbrances, which were referred to the proceeds, and was bought in by the bank. It then brought in the state court an action, "the purpose of which is (was) to have the oil and gas lease made by Shields (the former owner) to Head cancelled from the public records." This suit was met by an exception of no cause of action, based on the proposition that plaintiff had not alleged possession in either party, so as to place it "in the class of any real action known to the law of Louisiana", as well as on other grounds. In disposing of it the Supreme Court, through Justice Thompson, said:

"1. In answer to this contention, it may be said that the plaintiff's suit is neither petitory nor possessory. Nor is it an action in jactitation nor an action to try title under Act 30 of 1908. But because the action does not fall under either class designated, it does not follow that the petition fails to disclose a cause of action for want of an allegation in regard to possession. It is true the petition alleges that defendants are slandering plaintiff's title by claiming an oil lease on the plaintiff's land; but the facts as set out in detail and the prayer of the petition do not make the action one of jactitation, strictly speaking.

"The relief sought is, not that the defendants be ordered to disclaim title or to make good the asserted title—the peculiar

826

characteristic of an action in slander of title—but the prayer of the petition, responsive to the allegations of the petition, is that the alleged oil and gas lease be ordered cancelled and erased from the public records.

"For the purpose of this phase of the exception, the plaintiff must be regarded as the owner and possessor of the land, and there could be no possession of the land in the defendant under the oil lease separate and distinct from and to the exclusion of the owner of the land.

"But even where the plaintiff, claiming ownership, is not in actual possession of the property, he may yet have his action against a party out of possession for the cancellation of a recorded deed and to remove a cloud on his title."

The Court also discussed and cited authorities on the legal proposition that there could be no possession by the lessee under a mineral lease, apart from the possession of the owner from whom it had been obtained, which made it both impossible and unnecessary to bring a petitory action against lessee as one claiming possession as owner. It then proceeded to hold that since the mortgage had been given and recorded prior to the lease, the effect of the bankruptcy sale and purchase by the bank was the same as if it had proceeded with foreclosure in the state court and bought the property at sheriff's sale, correctly concluding that even if the amount paid was sufficient to pay the mortgage claim, the money had been furnished by the mortgagee as the price of the property, title to which it had acquired at the sale. It therefore held that the lease had been wiped off and could be cancelled as a cloud upon plaintiff's title.

In the present case, plaintiffs do allege possession; that the defendant had attempted to place a cloud upon their title by purchasing claims of former owners of land on the west bank of the Mississippi River, distinct from Glasscock Island upon which the property in dispute here is situated, and placing its deed of record, under which it has attempted to take illegal possession. Ordinarily, either an action in jactitation or one for possession, it seems, would have served the purpose, if as a matter of fact and law, plaintiffs had had possession for more than a year. However, defendant not only denied plaintiffs' possession but alleged possession in itself, which it has tried most vigorously to establish. After

pleading specially that the court was without jurisdiction "either in law or equity * * * for the reason that plaintiffs are not now and were not at the time of filing said bill, and have never been in possession * * *," it averred: "Your respondent, on acquiring lawful title to said property, as alleged, took and went into actual, open and peaceful possession of said land * * *." It also made reference to its suit filed earlier (No. 2486 above) to quiet its possession. It prayed a dismissal of plaintiffs' suit, with reservation of its right to claim damages in another suit.

In Parish of Jefferson v. Texas, supra, [192 La. 934, 189 So. 582], the Supreme Court began by saying that the suit "was instituted * * * to remove clouds from plaintiff's title * * *," and in answer to defendant's attempt "to treat this suit as a petitory action, or as an action in jactitation" it was said:

"The suit does not fall within the category of either of those actions. The nature of plaintiff's action is clearly expressed in the averments of the petition and in the relief sought by the prayer. Although plaintiff alleges that it is in possession of the property in dispute, defendants also claim that they are in possession of the property. The suit is clearly one to remove clouds from title, or, as it is sometimes called, a suit to quiet title. Such an action is well recognized in our jurisprudence. In Exchange National Bank of Shreveport v. Head, 155 La. 309, 310, 99 So. 272, which was a suit to remove clouds from title, the Court draws the clear distinction existing between such suits and petitory actions, possessory actions, actions in jactitation, and suits under Act No. 30 of 1908. This case was cited with approval and followed in the case of Bodcaw Lumber Company v. Kendall, 161 La. 337, 338, 108 So. 664. As shown by the opinion, that suit was for the cancellation of an oil lease so far as it operated as an encumbrance and a cloud on plaintiff's title to the land. The allegations of the petition in this case are similar to the allegations of the petitions in the Exchange National Bank and Bodcaw Lumber Company cases as outlined by the Court in its opinions."

This latter case involved no such question as the inseparability of possession by the owner from that of the lessee. The property claimed by the Parish had been expropriated for and a canal had been constructed thereon and was in operation by

the United States. The defendant claimed under a deed subsequently executed, whose broad terms were sufficient to cover the canal strip. The issue was as to the legal effect of the expropriation, that is, whether a title in fee simple had been condemned, or merely a servitude. There was judgment for the Parish confirming the title in fee simple.

Thus, it would appear, notwithstanding the numerous cases cited and discussions in the briefs to support the contention that there is no such proceeding known to the law of the state as one to remove a cloud from the title to real property, as distinguished from the various possessory and petitory actions, where both sides claim possession, thus putting that question before the court, as to each, it may, if necessary, consider title to dispose of the case. The trouble with any effort to finally dispose of the title in the present case, is that the government has claimed, surveyed and sold to plaintiffs, who have accepted the same, patents to lands not shown on the original survey of the whole of Glasscock Island, as it appears on the first sketch attached to the opinion handed down herein on October 10, 1939, which consisted of four sections only, to-wit, 65, 66, 67 and 68. According to this official plat Section 65 consisted of lot 1, shown as having 75.52 acres, lot 2 with 45.50 acres, lot 3 with 36.40 acres and lot 4 embracing 36 acres and totalling 193.42 acres; section 66 consisted of lot 1, containing 37.90 acres, lot 2 of 42.50 acres and lot 3 of 41.10 acres, or a total of 121.50 acres; while sections 67 and 68 were shown only as fractional sections, containing respectively 31.16 acres and 50.66 acres; and making a grand total for Glasscock Island of 396.84 acres of land. According to the abstract filed by plaintiffs (Hogue) and bearing designation "Hogue No. 7," filed in the possessory action No. 2486, the first transfer by the United States, after the survey made by Williams "in the fourth quarter of 1835," was an entry by John Griffin on June 20, 1839, covering lots 1, 2 and 3 of Section 65, with a total of 157.12 acres, which was the exact area of these three lots as shown on the plat. This 157.12 acres passed to George W. Green from Griffin by a will dated August 12th, and recorded August 22, 1860. The next year or May 9, 1861, Green attempted to acquire title to lot 4 of Sec. 65, as well as the entirety of the three remaining sections, 66, 67 and 68 by entry from the state of Louisiana and received a patent therefor bearing the same date, which was not recorded until May 5, 1867. Thus, if this patent from the state, granted twenty-six years after the Williams survey, had been valid, Green would have been vested with title to all the land shown on the island, amounting, as stated, to 396.84 acres, save and except such batture or accretions as had formed between 1835 and 1839 as to the first entry from the United States and between 1835 and 1861 as to those passing from the State.

Without deeming it necessary to describe in detail the subseque..t transfers by Green and his successors in title, it is sufficient to say that they attempted to convey, in words substantially the same in all transfers, "a certain tract of land known as Glasscock Island, situated in the Mississippi River," etc., down to and including James Boyd, one of the immediate vendors to the plaintiffs in the present case, the language used in the deed from Truman W. Leonard to Boyd being "with full warranty of title and all interest * * * in and to that certain tract of land or plantation situated in Concordia Parish, Louisiana, being an island in the Mississippi River, about twenty-two miles, more or less, below the town of Vidalia, commonly known as and called Glasscock Island * * *."

Boyd evidently discovered that his title, under the patent from the state, dated May 13, 1861, covering lot 4 of Section 65 and sections 66, 67 and 68, was invalid, for on November 24, 1925, he obtained from the United States a patent for "all of section 67, T. 5, N.R. 9 E, and all of section 68, T. 5, N.R. 9 E, containing 81.82 acres" which was the exact area shown on plat made by Williams in the fourth quarter of 1835. Had the title from the state been good, all accretions to these sections, after severance from the public domain, would likewise have inured to the owners, subject, of course, to the issue of whether such areas were accretions or "reappearance lands" under other chains of title as claimed by defendant. However, in the meantime, that is, between the original survey, in 1835 and the making of the plat by the Mississippi River Commission, as shown by the second sketch attached to the former opinion, comparing conditions in 1883 with those of 1835, all but a very small pear-shaped portion in the extreme western central edge of the original Glasscock Island had washed away or eroded and was occupied by the eastern channel of the Mississippi River.

828

If, after 1883 and prior to 1925, the part of Glasscock Island forming or comprising Sections 67 and 68 had been restored and other areas had attached themselves thereto, Boyd's acceptance of the patent from the United States was a conclusive recognition that he did not own those sections, and such portions of other lands as then existed, on all sides between them and the river, were necessarily excluded, both, because it was necessary in order to convey such accretions that they be described (Baree v. City of New Orleans, 22 La.Ann. 612), which they were not (the exact acreage of the two sections, 81.82 acres, as shown on the survey of 1835, appearing in the patent) and because the entry which was under the Stone and Timber Act could not include more than 160 acres. See T. 43, Sec. 311 U.S.C.A. The quantity of land in dispute in the present case it is conceded exceeds 700 acres.

Under the survey made by Guy R. Veal in 1926–27, there was also added to the original sub-divisions of Glasscock Island four more lots in Section 66, lying and adjoining on the west the first three shown in that section, numbered respectively, beginning at the top or north end and proceeding in a southerly direction, as lots 4, 5, 6 and 7, and which were patented to plaintiffs (Hogue), in 1932, at a time, as shown by Veal's plat, when a substantial area of land had formed to the west of these new lots. Here again, of course, was a recognition by the present plaintiffs of the fact that these four lots did not belong to them under their prior titles and hence were not accretions to lot 66.

In view of these recognitions of the title of the Government in the intervening areas, both on the south (patented to James Boyd) and on the west (patented to the Hogues), long after the various transfers purporting to convey the whole island, a serious question arises affecting plaintiffs' title to the lands beyond to the south and west, which it is believed can not be determined in the present state of the record. On the other hand, it has been found in the possessory action by Stricker Land and Timber Co. v. Hogue, No. 2486, that Stricker, for the reasons stated in the former opinion, did not have lawful possession of the disputed land. However, without finding it necessary to discuss the voluminous record, it is my view, both as a matter of fact and of law, that the plaintiffs in action No. 734 did have possession of the contested area sufficient to warrant its being recognized in them for present purposes. It is the duty of the court and of the litigants, so far as consistent with a proper regard for their legal situations and contentions, to bring this protracted litigation to an end as speedily as possible. Defendant has emphasized throughout that it has not put its title in issue and consequently has not offered its evidence other than its deed to show the kind of possession, that is, as owner. Having decided that plaintiffs are entitled to a decree protecting their possession, and that defendant does not have possession, it would seem that the proper course for this court to pursue is to permit the defendant to amend its answer so as to set up its title or else be relegated to an independent suit for that purpose. Therefore, the defendant will be allowed a period of thirty days in which to amend its answer to claim title; in default of which, plaintiffs will be awarded a decree quieting their possession, and relegating defendant to another action to try title.

Proper decree should be entered.