## No. 8918.

### JOHN JANNEY vs. JOHN J. BROWN.

In an action for the settlement of a commercial partnership, it is unnecessary to join, as party plaintiff, the apparent transferee of a portion of the partnership interest, if it appears that such transferee was a person interposed, with no real rights in the premises.

In a litigation growing out of a written contract between parties as common carrier, parol testimony is admissible to prove a subsequent verbal agreement, conferring certain privileges to the managing partner of the concern, such as carrying certain merchandise on the partnership boat for such partner free of charge.

APPEAL from the Civil District Court for the Parish of Orleans. *Lazarus*, J.

*E. H. Farrar* for Plaintiff and Appellee.

*Singleton, Browne & Choate* for Defendant and Appellant.

The opinion of the Court was delivered by

POCHÉ, J. This is a suit for the settlement of certain items alleged to have been omitted from the liquidation of a partnership formerly existing between plaintiff and defendant as common carriers.

The record shows that in December, 1875, plaintiff who owned two-thirds of the steamboat "Gov. Allen," and who represented the other owners, entered into a notarial contract with the defendant with a view to run said boat, as carrier of freight and passengers, between New Orleans and Bayou Sara, on the Mississippi river.

The main stipulations of the contract provided that Brown should have the exclusive management of the boat, for which he was to receive a salary of $400 a month, fifteen per cent of the net profits of the boat's earnings, and to have the privilege of carrying on the boat free of charge, the United States mail during the continuance of a contract which he had with the Government as mail carrier between New Orleans and Bayou Sara.

The contract was to last during the existence of the boat, and it further obligated Brown to furnish to Janney and other owners, a weekly statement of the business of the boat.

It appears that Brown then owned a sugar plantation on the river a short distance above Baton Rouge, and that during the continuance of the contract, he carried from New Orleans to his plantation large quantities of merchandise and other plantation supplies, for the transportation of which he paid nothing to the boat or his co-partners.

The principal object of this suit is to obtain from defendant a full account and settlement of the charges which are due as freight on such merchandise and plantation supplies, which freights are alleged to exceed two thousand five hundred dollars.

For defense, Brown first presented an

### EXCEPTION.

He contends that plaintiff is without capacity to stand in suit alone, and that Charles T. Beard and Thomas P. Leathers, who were joint owners of the boat, should have been made parties, in default of which the present action cannot be maintained.

From the evidence taken on the exception, we are satisfied that T. P. Leathers, who was a creditor of Janney, on account of a transaction with Benson, a previous co-owner of the "Gov. Allen," had no proprietary interest in the boat, and had, therefore, no concern with the contract between Brown and Janney. The other third of the boat, which was really owned by Conery, but which stood in the name of Coleman, was subsequently transferred by the latter to Charles T. Beard, a half-brother of Brown, and the bar-keeper of the boat. But the testimony shows to our entire satisfaction that in this transfer Beard was a person interposed for the real and true purchaser, who

was John J. Brown himself, and that Beard never did truly acquire the slightest interest in the ownership of the boat, or in the partnership formed between Janney and Brown. We deem it unnecessary to detail the reasons which have led us to this conclusion.

The exception of want of proper parties, was, therefore, correctly overruled.

---

### On the Merits.

The defendant urges that in a subsequent agreement between Janney and himself, made verbally, he was allowed the privilege of carrying free of charge, all articles of plantation supplies shipped from New Orleans to his plantation in West Baton Rouge, and that such articles were thus brought free of charge on the "Gov. Allen" during the entire continuance of the partnership in question.

The report of experts appointed for the purpose of ascertaining the amount of charges due on these things under card rates, or ordinary rates, shows that the bill for such freight would have amounted to $2555 22.

The judgment of the lower court is in favor of plaintiff for the sum of $1448 27, and defendant appeals.

On the trial below plaintiff urged a claim of nine hundred dollars, for a like sum charged to have been misapplied by Brown, and for which it is urged that he should be held responsible.

As the district judge gave no reasons for his judgment, we are not informed of the disposition which he made of that claim, and whether it forms any part of his finding in favor of plaintiff.

But be that as it may, we think that the charge should be rejected.

1. Because the petition contains no allegation touching such a charge, the demand is restricted by the pleadings to an account for alleged unsettled freight earnings of the boat.

2. But as evidence on the question was admitted without objection, we have considered the same and have, therefore, reached the following conclusion:

That the conduct of Brown in making the outlay of that amount was at the time sanctioned and was subsequently and unreservedly ratified by Janney.

The amount was entrusted to one H. C. Young for the purchasing of stock in a railroad connecting the town of Clinton and Port Hudson, a shipping point on the Mississippi river, the object being to obtain a voice in the board of directors of the road, so as to secure shipments

on the "Allen" from that corporation. Through the infidelity of the agent, the scheme failed and the money was lost. Under the circumstances developed by the testimony, we hold that the loss was that of the partnership, and that it should not be visited exclusively on Brown. The investment, when made, met with no objection from Janney, on whom the money was drawn under Brown's orders, and by whom it was paid, with full knowledge of the projected venture.

The issue is thus limited to the alleged verbal agreement touching Brown's right to carry his up-freights free of charge. Its main support is his own testimony. He states that after the execution of the contract with Janney, and on the same day, he remarked to the latter that he had forgotten to stipulate concerning the carrying of his up-freights, to which Janney had answered that it was a trifling matter, and that he (Brown) should go on and run the "Allen" just as he had run the "Pike."

In that connection, the record shows that the "W. S. Pike," which was owned exclusively by Brown, had been run by him, in the same trade, since her construction to the day when she was destroyed by fire a short time previous to the date of this contract, and that the "Allen" was to have been, as she was, under the contract, placed in that trade in her stead, with the same days of departure and arrival. As the sole owner of the "Pike," it stands to reason that Brown paid no freight charges on his own shipments from this city to his plantation, and it is undisputed that Janney knew it.

Hence we construe his answer to Brown's remark meaning unequivocally that touching his up-freights, Brown would have the same privileges on the "Allen" which he had enjoyed on the "Pike" when he was running her in the trade on which they were together venturing with the partnership formed on that day.

To corroborate his testimony which was in the main denied by Janney, the defendant offered the testimony of McCann, who was present at the conversation, and of Conery who was a part-owner of the "Allen." On objection of plaintiff's counsel the testimony was excluded on the ground that parol evidence cannot be admitted against or beyond what is contained in the Acts and under the provisions of Article 2276 of our Civil Code.

The agreement shown by Brown's testimony, added nothing to and detracted nothing from the contract of partnership. His testimony was properly admitted to show a subsequent verbal agreement on the subject of a matter which formed no part of the written contract and

which had not been mentioned or discussed at the execution of the act. It was right and proper that he should have been allowed to corroborate it by other parol testimony. This rule is well settled in our jurisprudence. Cunningham vs. Caldwell, 7 Rob. 520; Mathias vs. Lebnt, 10 Rob. 94; Jamison vs. Ludlow, 3 A. 492.

The judge, therefore, erred in rejecting the proffered testimony. As it comes up with the record under the bill of exceptions, we have considered it and give it due weight.

McCann testified that he was present at the conversation related by Brown, and he corroborates the latter's testimony thereon.

Conery, the co-owner, testifies that the "Allen" had been running in opposition to the "Pike," with a resulting loss to her owners of $30,000, and that the contract with Brown, had proved to be the salvation of the former, by reason of his efficient management and of his great prestige in the Bayou Sara trade, and that if he had been consulted touching Brown's request for the free transportation of his upfreights, he would have cheerfully made that concession, and many others, with a view to secure his valuable co-operation in the business of the "Allen."

Our conclusion is that Brown's defense is fully made out by the evidence, and that the judgment of the lower court is erroneous.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and that plaintiff's claim be rejected and his action dismissed at his cost in both courts.