(108 So. 664)

No. 27227.

## BODCAW LUMBER CO. OF LOUISIANA, Inc., v. KENDALL.

(May 3, 1926. Rehearing Denied May 31, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Quieting title ⬥12(1)—Party claiming ownership of property, though not in possession, can sue another, also out of possession, to annul oil lease.**

    Party claiming ownership, though not in actual possession of the property, may have his action against another party, also out of possession, to annul an oil lease affecting said property.

2. **Mines and minerals ⬥5—Bed of navigable stream is state property, subject to mineral lease.**

    Bed of stream, which was navigable at time of admission of state to Union, is state property, and grant by state to exploit its bed for oil, gas, and other minerals is unassailable.

3. **Mines and minerals ⬥4—State has no authority to grant minerals in bed of nonnavigable stream.**

    Where stream was not navigable when state was admitted to Union, state does not own bed, and is without authority to grant minerals therein.

4. **Navigable waters ⬥1(7)—Evidence held to show bayou was nonnavigable when state was admitted to Union.**

    Evidence *held* to show that stretch of bayou, a right to exploit bed of which for oils and other minerals the state had granted, was nonnavigable when state was admitted to Union.

Appeal from Second Judicial District Court, Parish of Webster; John S. Richardson, Judge.

Suit by the Bodcaw Lumber Company of Louisiana, Incorporated, against Heidt Kendall. Judgment for plaintiff, and defendant appeals. Affirmed.

Dickson & Denny, of Shreveport, for appellant.

White, Holloman & White, of Alexandria, A. L. Burford, of Texarkana, Ark., J. W. Hawthorn, of Alexandria, and Tinsley Gilmer and Thigpen, Herold, Lee & Cousin, all of Shreveport, for appellee.

THOMPSON, J. The plaintiff claims title to certain lands described in the petition and the mineral rights and privileges on certain other lands also set out in the petition. The plaintiff's ownership is supported by mesne conveyances having as their origin patents from the United States.

Some of the lands border on both sides of what is known as Dorcheat bayou, which has its source in Arkansas and flows through

Webster parish and empties into Lake Bistineau.

On May 13, 1924, the state of Louisiana granted to defendant Kendall, the right to exploit, for oil, gas, and other minerals, the bed of Dorcheat bayou. This lease covered part of the lands claimed by the plaintiff.

The present suit is to have the said lease canceled and annulled, in so far as it affects the plaintiff's land, as operating an incumbrance and a cloud on the plaintiff's title.

Preliminary to answering, the defendant filed certain exceptions challenging the right of the plaintiff to sue in the manner and form as set forth in the petition.

The exceptions were overruled, and, while they are discussed in defendant's brief, counsel in oral argument practically conceded the want of merit in the grounds urged in exceptions and abandoned the same.

[1] However, the right of a plaintiff claiming ownership of land to sue to annul an oil lease affecting said land has been expressly held by this court.

In Exchange National Bank v. Head, 155 La. 310, 99 So. 272, we held that even where the plaintiff, claiming ownership, is not in actual possession of the property, he may yet have his action against a party out of possession for the cancellation of a recorded deed and to remove a cloud on his title. See, also, Atchafalaya Land Co. v. Brownell-Drews Lbr. Co., 130 La. 657, 58 So. 500.

The decisive question in the case is whether or not Dorcheat bayou was a navigable stream when Louisiana was admitted into the Union in the year 1812.

[2] If the question can be answered in the affirmative, then the bed of said bayou belongs to the state by virtue of the state's sovereignty, and the lease by the state to the defendant is unassailable. Smith v. Dixie Oil Co., 156 La. 691, 101 So. 24.

[3] If, on the other hand, the bayou was not navigable in 1812, the state did not own the bed of the stream, and of course was without authority to make a lease thereof to the defendant. Amite Gravel & Sand Co. v. Roseland Gravel Co., 148 La. 704, 87 So. 718.

The district judge held that the portion of the bayou which flows through the lands involved was not and had never been navigable, and annulled the defendant's lease.

Our examination of the evidence has not brought us to a different conclusion.

It is conclusively established by the evidence, and the fact is disputed by no one, that the bayou in question is not now being used and has never been used for navigation purposes above what is known as Murrell's Point, which is located about two miles southwest of the town of Minden.

The evidence further establishes that the present condition of the bayou as to water depth, natural obstructions, the slope of the banks, and the general topography of the country through which the stream flows, is practically the same as it was in 1812. All of the streams within that immediate section, including Dorcheat, are very crooked, and contain many bends and sharp curves in their devious meanderings through the swamp. The flow of the water is obstructed by cypress stumps, growing and dead trees, and fallen timbers.

That the stream is a nonnavigable water course, has ever been so regarded, and will ever continue as such we do not believe is open to dispute.

Nor is the said bayou, in the light of the evidence in this record, susceptible by the ingenuity and handwork of man of being made navigable for commercial purposes in the sense in which that term is commonly understood.

The general government has never recognized the bayou as one of its navigable water courses, and has never undertaken to improve it or to clear it from the natural obstructions so as to make it navigable.

On the contrary, the United States has impliedly if not expressly recognized the non-navigability of the bayou by permitting several stationary concrete bridges to be built across such bayou in carrying out the highway system of the state.

It goes without saying that such structures furnish an absolute impediment to the use of said bayou for navigation purposes, and justify the conclusion that the government would not have permitted such stationary bridges to be built if the stream had been considered a navigable one.

What has been said refers of course to the stretch of the bayou above Murrell's Point.

The lands in controversy are all located above or north of said point.

There is some evidence in the record by some of the oldest inhabitants to the effect that before and during the early 60's there was navigation by small steamboats and other water crafts from Red river through Loggy bayou and Lake Bistineau into Dorcheat and up the latter to Murrell's Point.

This part of the bayou, however, ceased to be used for navigable purposes many years ago, and ·in its present natural condition could not be used for such purpose.

One of the oldest witnesses, when asked if it would be possible for a steamboat to go up the bayou as far as Murrell's Point, replied that a person could not go there in a skiff without dragging it at a great many places.

In the report of Mr. Miller, captain of the Corps of Engineers, made January 10, 1883, it is stated that the head of navigation on the Dorcheat bayou was near Minden, and that his examination was made from that point down.

He further stated:

That Dorcheat bayou flows into Lake ·Bistineau, which empties through Loggy bayou into Red river, establishing a line of water communication with Red river of about 70 miles in length.

That the system was navigable at high water for the boats which run to Shreveport· and navigation is good for about five months in the year. That to attempt to improve the navigation so as to render it good for two more months would involve an expense not justified by the amount of commerce benefited.

It will be seen, therefore, from the report referred to, that the government did not consider Dorcheat bayou above Murrell's Point as a navigable stream, and did not consider the commerce bordering the stream below the point stated as of sufficient importance and magnitude to justify appropriating money to improve or even to maintain the navigability of that stretch of the bayou.

Mr. Horace M. White, a civil engineer, testified that from a careful examination of the country, Dorcheat bayou in its natural state is not navigable above Murrell's Point; that it is physically impossible for any kind of a boat to navigate it in its present condition; that there is not sufficient water; and that if there were the cypress stumps in the channel and live cypress trees would present such obstructions as to prohibit the passage even of skiffs.

Several other witnesses, including the parish engineer of Webster parish, testified that the bayou could not be navigated above Murrell's Point.

This being the condition of the bayou at· the present time, it is natural to assume that a like condition existed in 1812, and has always existed, especially in view of the fact that many of the oldest citizens say that within their memory and to their knowledge no boats had ever been known to go up said bayou beyond Murrell's Point.

In the case of Amite Gravel & Sand Co., referred to supra, it was held that evidence that the stream there under consideration had not been considered navigable by the federal government which had permitted sta-

tionary bridges over it, that it was used only by rowboats or small boats with detachable engines, that it was narrow and obstructed, and had such a fall that if cleared out it would be a torrent, were sufficient to support the conclusion that the stream was not navigable at the point of the stream in controversy.

[4] The evidence in this case is much stronger in support of the nonnavigability of the Dorcheat bayou than it was in the case cited, and leads to the inevitable conclusion that the stretch of said bayou where plaintiff's lands are located was not navigable in 1812, has never been navigable or navigated since that date,.and could not be made navigable by dredging and clearing the stream of the natural obstructions. To attempt to make the bayou navigable would involve a greater expense to the government than to construct or dig a canal and to make a new stream entirely.

The judgment appealed from is affirmed.