ROGERS, Justice.
 

 This is a suit which was instituted on October 4, 1937, in the Twenty-Fourth Judicial District Court by the Parish of Jefferson against certain landowners, their mineral lessee, The Texas Company, and certain persons holding interests from the Texas Company, to remove clouds from plaintiff’s title to a strip of land 400 feet in width as described in the petition. From a judgment in favor of plaintiff, the defendants have appealed.
 

 Shortly after the filing of this suit, the defendants joined in an application to re7 move the case to the United States District Court for the Eastern District of Louisiana, on the ground that the suit arose under the Constitution and laws of the United States and that separable controversies are involved. The judge of the United States District Court declined to entertain jurisdiction of the suit, and it was ordered remanded to the Twenty-Fourth Judicial District Court, Parish of Jefferson, for further proceedings. (
 

 The plaintiff, Parish of Jefferson, alleges in its petition its acquisition in full ownership of the strip of land in dispute from the heirs of Samuel Davis by virtue of a judgment of expropriation, dated December 12, 1921, and registered in the conveyance records of the parish on June 23, 1923. The plaintiff further alleges that by act before McCune, notary public, it “granted the United States of America a servitude on and along said 400 foot strip of land for perpetual use as a right of way for the Barataría Bay Waterway.” This transaction took place on January 19, 1922.
 

 As the Honorable L. Robert Rivarde, presently Judge of the Twenty-Fourth Judicial District Court, Parish of Jefferson,
 
 *941
 
 was appointed and acted as curator ad hoc for the absent heirs of Samuel Davis in the expropriation suit, he recused himself and designated the Honorable Joseph A. McCaleb, a well known lawyer residing in the Parish of Jefferson, possessing all the qualifications of a judge of a district court, to act in his place and stead for the trial of this case.
 

 After this suit was remanded to the state court by the judge of the United States District Court, The Texas Company and the eleven other defendants filed the following exceptions in the order stated, viz.: (1) Exception of nonjoinder of the United States as a party defendant; (2) exception of misjoinder of causes of action and motion to elect; (3) exception of vagueness; and (4) plea to the jurisdiction, ratione mátense.
 

 All these exceptions and pleas, which jvere extensively argued both orally and by brief in the district court, were taken under advisement by the trial judge, and later overruled. The defendants also filed exceptions of no right or cause of action, which were referred to the merits. Reserving the benefit of their exceptions and pleas, each defendant, answering separately, pleaded that the judgment of expropriation was null for want of jurisdiction in the district court and for want of registration in the conveyance records of the Parish of Jefferson; that the judgment of expropriation had the effect of vesting in the parish a servitude only, which servitude it had transferred to the United States government, and that, consequently, the parish was wjthout interest to prosecute this suit; that if the judgment of expropriation awarded the fee, the judgment was null to that extent as being beyond the pleadings; that if the judgment should be construed as awarding the fee, the judgment was violative of the due process and equal protection clauses of both Federal and State Constitutions ; that as the United States was in possession of the property and was treated by plaintiff as the owner thereof, plaintiff was estopped to make the claims herein asserted; and, finally, that even though by the judgment of expropriation, the plaintiff had acquired the fee of the property and even though the plaintiff had transferred to the United States only a servitude, the judgment of the court should restrict the use of the property by the plaintiff to navigation canal purposes.
 

 A short statement of the essential facts,' as revealed by the record, will assist in understanding the legal questions presented on this appeal. These facts are as follows: In 1921, the heirs of Samuel Davis were the owners of 2414 acres of marsh land in the Parish of Jefferson, which they had inherited from their father. Samuel Davis himself had inherited the lands from his father and mother, Mr. and Mrs. Jonathan Davis, who had acquired the property from the State of Louisiana. At that time these marsh lands were wholly inaccessible, of no practical use for any purpose.
 

 Under the River and Harbor Act of March 4, 1915 (38 Stat. at Large 1049, 1055, 63d Congress, Session III, Chapter 142, Section 15), Congress authorized the Secretary of War to cause preliminary examinations and surveys to be
 
 *943
 
 made at Barataría Bay, Louisiana, and connecting waters. On June 21, 1917, a report from the Chief of Engineers was filed with the House of Representatives, recommending that a canal be cut from Bayou Dupont to Bayou Cutler, on condition that no expense should be incurred by the United States for acquiring any lands and easements necessary for the purpose of the improvement. In 1919 (River and Harbor Act of March 2, 1919, 40 Stat. at Large 1275, 65th Congress, Session III, Chapter 95), Congress authorized the construction of the canal, afterwards known as the “Dupre Cut,” making the necessary appropriation to cover the cost of the canal, but not for the cost of acquiring any lands or easements.
 

 The heirs of Samuel Davis having declined to donate any interest in their lands to the United States government, the Parish of Jefferson,
 
 in
 
 1921, obtained a judgment against them, through substituted service, expropriating out of their lands a strip of land 400 feet wide, running through portions of Sections 18, 19, and 20 of Township 17 South, Range 24 East. The judgment awarded the defendants, heirs of Davis, $2 per acre for the 80 acres expropriated. Thereafter, in accordance with the terms of the judgment and as provided by Article 2635 of the Civil Code, the Parish of Jefferson deposited with the State Treasurer, to the credit of the heirs of Samuel Davis, the sum of $160. The judgment of expropriation was registered in June 1923, in the conveyance records of the Parish of Jefferson. In July 1923, the heirs of Samuel Davis, who were the defendants in the expropriation suit, acting through their duly accredited agent, Riley Strickland, who was -also an attorney'at law, collected the amount which the Parish of Jefferson had deposited with the State Treasurer in payment of the expropriated lands. The Dupre Cut Canal was completed in 1925 by the United States government which thereafter, and up to the present time, has maintained and operated the waterway.
 

 On February 27, 1926, the heirs of Samuel Davis sold to the Delaware Louisiana Fur Trapping Company, Inc., an undivided half' interest in the property inherited by them from their father. This sale necessarily embraced the 400 foot strip expropriated by the Parish of Jefferson and also, presumably, the canal. constructed, owned and operated by the United States government, since neither the strip of land nor the .canal was excluded from this deed. The sale was made subject to an undivided half interest previously granted to one A. Delavigne. On January 12, 1926, the Delavigne interest in the, property was acquired by Edwin P. Brady. These two deeds constitute the basis of the title claimed by all the defendants.
 

 The first question the Court is called upon to dispose of is whether plaintiff’s action must be dismissed because the United States has not been made a party to this suit: Defendants contend that the act before McCune, notary, must be construed in order to determine - its legal effect, and that, consequently, as a prerequisite to the consideration of the rights of either the plaintiff or the defendants, the court must ascertain and adjudge the rights and the
 
 *945
 
 title of the United States which can not validly he done when the United States is not before the court.
 

 As the United States can not be sued by the Parish of Jefferson and impleaded as a defendant with the defendants in this suit, defendants’ contention in this respect amounts to the claim that no court can, in any proceeding, adjudge, as between plaintiffs and defendants, the question of whether the act before McCune, notary, constitutes, under the laws of this State, the granting of a servitude or a transfer in full ownership by the Parish of Jefferson to the United States.
 

 As shown by its petition, plaintiff recognizes and at all times has recognized every right, title and interest that the United States has in the strip of land in dispute, and that any final judgment rendered in this case will not constitute res judicata so far as the United States is concerned. The trial judge, in his opinion on the exception, also recognizes this and in the judgment on the merits, which is now under consideration on this appeal, the rights of the United States under the notarial act of donation were fully reserved.
 

 But because the final judgment rendered in this case can not constitute res judicata so far as the United States is concerned, there is no good reason why the court can not render a judgment' construing the notarial act, which judgment will be final and become res judicata so far as the parties to this suit are concerned.
 

 In Abney v. Levy, 169 La. 159, 124 So. 766, decided in 1929, the plaintiff alleged that the property involved belonged to a third person but not to the defendant. The third person referred to was not a party to the suit. This Court stated, 169 La. at page 162 of the opinion, 124 So. at page 767: “It is a matter of no importance that, in this case, the third person, in whom it is alleged title vested, is not a party to this suit. He is not a necessary party to it. The court, even in his absence, may inquire to ascertain whether it appears that a perfect title is vested in him. For the court to be legally in a position to do this it is not necessary that the third person to the sale be bound by the decree.” The following decisions, cited by plaintiff, are in accordance with the quoted statement: Tennent v. Caffery, 163 La. 976, 113 So. 167; Bickham v. Kelly, 162 La. 421, 110 So. 637; Bodcaw Lumber Co. v. Kendall, 161 La. 337, 108 So. 664; Amite Gravel & Sand Co. v. Roseland Gravel Co., 148 La. 704, 87 So. 718; State ex rel. Atchafalaya Basin Levee Board v. Capdervielle, 142 La. Ill, 76 So. 327; Bonvillain v. Bodenheimer, 117 La. 793, 42 So. 273; Mays v. Witkowski, 46 La. Ann. 1475, 16 So. 478; Janney v. Brown, 36 La.Ann. 118; Workingmen’s Bank v. Lannes, 30 La.Ann. 871; Jones v. Elliott, 4 La.Ann. 303; Hall v. Nevill, 3 La.Ann. 326.
 

 The case of United States v. State of Oregon, 295 U.S. 1, 55 S.Ct. 610, 79 L.Ed. 1267, is also appropriate to the question of whether the United States is a necessary
 
 *947
 
 party. There suit was brought by the United States against the State of Oregon to quiet title to 81,786 acres of unsurveyed lands in Harney County, Oregon. One of the defenses set up by the State of Oregon was that the United States was without right to maintain the suit because it had, prior to the filing thereof, granted patents covering various portions of the land in dispute to various persons and had thereby parted with whatever interest it had in the lands so patented and that the patentees were necessary parties. The Supreme Court of the United States said, 295 U.S. on page 24 of the opinion, 55 S.Ct. on page 619, 79 L.Ed. 1279, that “a bill to quiet title may not be defeated by showing that the plaintiff’s interest, otherwise sufficient to support the bill, is subject to possibly superior rights in third persons not parties to the suit. * * * It is enough that the interest asserted by the plaintiff in possession of land is superior to that of those who are parties defendant.” And, 295 U.S. on page 25 of the opinion, 55 S.Ct. on page 620, 79 L. Ed. 1280, the Court declared that “The United States is entitled to relief so far as it is able to show that Oregon is without any right or title on the basis of which it would be entitled to disturb the possession of the United States.”
 

 The defendants have cited a number of decisions by this Court and by the United States Supreme Court in support of their proposition that since the United States is not a party, defendants can not be required to litigate the issues involved in this suit. De St. Romes v. Levee Steam Cotton Press Co., 34 La.Ann. 419; Succession of Todd, 165 La. 453, 115 So. 653, and Arizona v. California, 298 U.S. 558, 56 S.Ct. 848, 854, 80 L.Ed. 1331, are three decisions upon which defendants seem to particularly rely and are typical of all the cases cited by them. All these cases are distinguishable from the instant case. In the De St. Romes case the plaintiff sought to recover dividends on stock without claiming title to the stock, which was vested in a third person. Such a situation is not presented by this case. In the Succession of Todd, plaintiffs sought to annul an adjudication of real estate to John A. Todd without making parties various persons to whom Todd had subsequently sold. Only one of the subsequent vendees was impleaded as a defendant. The petition was so framed as to lead to the conclusion that the adjudication of the entire property to Todd, and not merely the adjudication to the named defendant, was involved in the suit, and as it was obvious that a decree annulling the adjudication would affect the rights of persons claiming title through the adjudication, the court properly held that they were necessary parties defendant. Arizona v. California was a case in which the State of Arizona applied for leave to file a suit in the Supreme Court of the United States against the State of California and five other states. The object of the suit was to fix by judgment the plaintiff’s • share of the water flowing in the Colorado River, subject to diversion and use. The decree sought had no relation to any use of water the United States had undertaken to impound that infringed
 
 *949
 
 rights which Arizona might assert subject to the superior powers of the United States. The relief asked, and that which upon the facts alleged would alone be of benefit to Arizona, was “a decree adjudicating to petitioners the ‘unclouded * * rights to the permanent use of’ the water.” The Court held that such a decree could not be framed without the adjudication of the superior rights asserted by the United States. In so holding the Court stated: “Every right which Arizona asserts is so subordinate to and dependent upon the rights and the exercise of an authority asserted by the United States that no final determination of the one can be made without a determination of the extent of the other.”
 

 In the case at bar, none of the defendants claims or could claim any right by, under or through the United States. No defendant claims anything which is dependent upon the rights of the United States. And so far as the United States is concerned, its rights are expressly reserved by the judgment appealed from. The judgment in no wise affects the rights of the United States.
 

 Third persons can not assume to enforce conditions attached to a grant when the government does not complain of their breach, and holders of an invalid title do not strengthen their position in attempting to show how badly the government has been treated in respect to the property. Van Wyck v. Knevals, 106 U. S. 360, 1 S.Ct. 336, 27 L.Ed. 201; Walsh v. Columbus, Hocking Valley & Athens R. Co., 176 U.S. 469, 20 S.Ct. 393, 44 L. Ed. 548. These authorities are particularly applicable to the position assumed by defendants in this case. They seek to show how badly plaintiff has misused the government, while they plainly indicate their willingness to misuse the government themselves.
 

 It will be noted that in Bickham v. Kelly, plaintiff sought to rescind a sale of real estate, claiming that there were outstanding interests in the property owned by third persons. None of these alleged owners were parties to the suit. Notwithstanding this fact, the Court proceeded to consider the alleged outstanding titles and found, setting forth its reasons for its finding, that they were not such as to warrant the granting of plaintiff’s demand. Although the third persons were not parties to the suit, the Court considered the evidence with reference to their alleged titles, construed such alleged titles and rejected plaintiff’s claim because the titles did not warrant a judgment in favor of plaintiff.
 

 Bodcaw Lumber Company v. Kendall was a suit to remove clouds from title in which the plaintiff alleged that a mineral lease granted by the state to the defendant constituted such a cloud. The decisive question in the case was whether. Dorcheat Bayou was a navigable stream when Louisiana was admitted into the Union in the year 1812. The answer to this question determined whether the state was the owner of the property and the validity of the lease granted by it to the defendant. The trial judge held that the state did not own the bed of the stream in dispute and
 
 *951
 
 annulled the lease. Notwithstanding the state was not a party to the proceeding, this Court, after considering and discussing the evidence, affirmed the judgment.
 

 Our conclusion is that the United States is not an indispensable party to this suit. The United States 'can not be made such a party and complete relief can be granted as between the parties litigant.
 

 Having disposed of this preliminary question, we shall proceed to consider the remaining questions involved in this suit.
 

 The defendants seek to treat this suit as a petitory action, or as an action in jactitation. The suit does not fall within the category of either of those actions. The nature of plaintiff’s action is clearly expressed in the averments of the petition and in the relief sought by the prayer. Although plaintiff alleges that it is in possession of the property in dispute, defendants also claim that they are in possession of the property. The suit is clearly one to remove clouds from title, or, as it is sometimes called, a suit to quiet title. Such an action is well recognized in our jurisprudence. In Exchange National Bank of Shreveport v. Head, 155 La. 309, 310, 99 So. 272, which was a suit to remove clouds from title, the Court draws the clear distinction existing between such suits and petitory actions, possessory actions, actions in jactitation, and suits under Act No. 30 of 1908. This case was cited with approval and followed in the case of Bodcaw Lumber Company v. Kendall, 161 La. 337, 338, 108 So. 664. As shown by the opinion, that suit was for the cancellation of an oil lease so far as it operated as an encumbrance and a cloud on plaintiff’s title to the land. The allegations of the petition in this case are similar to the allegations of the petitions in the Exchange National Bank and Bodcaw Lumber Company cases as outlined by the Court in its opinions.
 

 Defendants contend that the state courts are without jurisdiction ratione materiae for the reason that by the act before McCune, notary, the Parish of Jefferson conveyed a fee title to the United States and that the Legislature has conceded exclusive jurisdiction to the United States in such a case. In support of their contention, defendants refer to clause 17, section 8, Article I and clause 2 of Article VI of the Federal Constitution, U.S.C.A.; and also Act No. 12 of 1892 of the Legislature of this State. The only application that Act No. 12 of 1892 has to this case is that under its terms the United States itself could have expropriated the land or the easement necessary for the construction of its navigation canal. The right of th.e United States to do this is expressly recognized under the first paragraph of the statute. In fact, the United States could have expropriated independently of Act No. 12 of 1892. The second paragraph of the legislative act refers only to lands of which the United States is or becomes the owner, and not to lands on which the United States merely enjoys a servitude. In other words, the Legislature of this State, by adopting Act No. 12 of 1892, did not attempt to grant exclusive jurisdiction to the United States over property unless by purchase, condemnation or otherwise the United States becomes and remains the
 
 owner
 
 of the property referred to.
 

 
 *953
 
 It is true that the Barataría Bay Waterway was a federal and not a local project. But it is also true that the question for consideration in this case is the nature and effect of a donation to the United States of real estate; in other words, whether the United States acquired the fee of the property donated or merely a servitude thereon. That question requires the interpretation of' the judgment of expropriation and of the notarial act of donation. Since the real estate involved is situated in Louisiana, the question must necessarily be determined according to the laws of this state. Kohl v. United States, 91 U.S. 367, 23 L.Ed. 449.
 

 Defendants contend that the expropriation proceeding and judgment are null because the Twenty-Fourth Judicial District Court was without jurisdiction ratione materiae. Defendants’ contention is predicated on their claim that the Parish of Jeffer-' son followed the general expropriation statutes and not Act No. 16 of 1917, Ex.Sess., which was the controlling law, with the result that the property was to be taken in the manner provided for taking public roads, which was not done.
 

 Answering the contention, plaintiff points out that Act No. 16 of 1917, Ex.Sess., is merely permissive; that as jurisdiction vested in the district court by virtue of section 35 of Article 7 and section 6 of Article 14 of the Constitution of 1921, the Parish of Jefferson was authorized to follow either one of two courses, namely, first, if the parish desired to limit its future action with reference to the property sought to be expropriated, it could have followed the method provided by Act No. 16 of 1917, Ex.Sess., or secondly, if the parish did not desire to limit its future action with reference to the property, it could follow, as it did, the method of expropriating property prescribed by the general law of the State (Act No. 123 of 1910), that is to say, through judicial proceedings.
 

 Defendants’ attack on the authority of the district court to render the judgment of expropriation is, at best, merely a complaint that the Parish of Jefferson selected the wrong method of procedure. Even if that be correct, no such objection was raised by the heirs of Samuel Davis. The judgment of expropriation was rendered, signed, recorded, and acquiesced in by the heirs of Samuel Davis many years prior to the acquisition by any defendant from or through them of any right or interest in the expropriated property. The heirs of Davis having sanctioned the proceeding and acquiesced in the judgment, the judgment, though erroneous, is binding on them. Knox v. Louisiana Railway & Navigation Company, 157 La. 602, 102 So. 685. Consequently, the judgment is also binding'upon defendants, their successors in title. Daughters v. Guice, 1 Rob. 37; Pipes v. Norsworthy, 25 La.Ann. 557; Hargrave v. Mouton, 109 La. 533, 33 So. 590.
 

 The principal question presented in this case is whether plaintiff has ever had any interest in the property in dispute other than merely a servitude, acquiring for and transferring to the United States the “lands and easements” required by the United States, which were to be furnished free of cost for the purpose of enabling the United States to construct the Barataría Bay Wa
 
 *955
 
 terway' (Dupre Cut). This question involves the validity of the interpretation of the judgment of expropriation in favor of the Parish of Jefferson and the construction of the notarial act of donation under which the United States acquired its rights in the property.
 

 Defendants contend that it was
 
 not
 
 necessary for the Parish of Jefferson to acquire, and that the parish did not acquire anything by the judgment of expropriation but a right of way for the navigation canal which the United States proposed to construct. As to whether the judgment of expropriation awarded to the Parish of Jefferson the full ownership of the property expropriated, or merely a servitude on the property, must be determined by a reading of the judgment itself.
 

 An examination of the petition and the answer filed in the expropriation suit shows that the Parish of Jefferson demanded the expropriation of the land, not merely a servitude on the land, and that the curator ad hoc put that question at issue.
 

 In paragraph 7 of the petition it was specifically alleged: “That the
 
 portion of land herein sought to be expropriated
 
 contains an area of some eighty and no/100 (80) acres and has no improvements whatever on it, but is unused, barren land, subject to overflow, is swampy and has no commercial value at this time.” (Writer’s italics here and elsewhere herein.) In paragraph 8 of the petition it is alleged: “That the
 
 land herein sought to be expropriated
 
 was originally owned by
 
 Jonathan
 
 Davis * * In paragraph 11 of the petition it is alleged: “That petitioner herein is ready and willing to pay Two ($2.00) dollars an acre for said
 
 land herein sought to be expropriated
 
 which is far in excess of its true value * * And in the prayer of the petition plaintiff prayed “that said parties be duly cited to appear through said curator ad hoc and to answer to this petition and that after due proceedings had, the
 
 property above described
 
 by petitioner as necessary for its rights of ways be adjudged to petitioner upon payment *
 

 In paragraph 4 of his answer the curator ad hoc expressly denied that it was necessary to expropriate the property described in the petition for a right of way to dig a canal, and in the prayer of the answer, the curator ad hoc asked “that should the jury conclude that it is absolutely necessary that the
 
 land described herein be expro
 
 priated, then in that event respondent prays, that they be allowed such damages as follows * *
 

 The verdict of the jury was in the following language: “Verdict for plaintiff in
 
 expropriating 80 acres at $2.00 per acre
 
 to be paid to defendants and costs.” And the judgment of the court, rendered in accordance with the verdict of the jury, after recognizing the right of the Parish of Jefferson to expropriate, set forth the extent of the rights acquired by the parish in the following unambiguous and emphatic language : “and recognizing the Parish of Jefferson as acting through its Police Jury as having the
 
 full ownership of the follovaing described property
 
 to-wit:” (then follows a detailed description of the 400
 
 foot
 
 strip of land expropriated). The judgment, also in accordance with the verdict of the
 
 *957
 
 jury, awarded the heirs of Davis $2 per acre for the 80 acres of land thus expropriated. The amount of the judgment was deposited by the parish with the State Treasurer as provided by Article 2635 of the Civil Code and was afterwards withdrawn by the heirs of Davis.
 

 In the power of attorney under which the heirs of Davis authorized their agent Riley Strickland to collect the amount of the judgment deposited to their credit with the State Treasurer, they also authorized their agent to sell for $1000 all the land they owned in the Parish of Jefferson. As this land, less the 80 acres expropriated, comprised 2334 acres, it is clear that the heirs of Davis were willing to sell their land at a price less than forty-three cents; an acre. From the foregoing it clearly appears that under the judgment awarding the Davis heirs $2 an acre, the Parish of Jefferson paid them more than four times the amount at which they were willing to sell the full ownership of the land. The Dupre Cut Canal was completed in 1925, thus making all the Davis lands accessible. The consideration paid to the heirs of Davis under the deed to the Delaware Louisiana Fur Trapping Co., Inc., dated February 27, 1926, which is the deed on which the claims of all the defendants rest, was $2250 for a one-half interest in the land. This was at the rate of less than $2 per acre. It thus appears that after the canal was constructed and the Davis lands were made accessible, the price per acre paid them by a private purchaser was less, than the price per acre paid them by the Parish of Jefferson several years prior thereto and while the Davis lands were wholly inaccessible.
 

 In the case of Knox v. Louisiana Railway & Navigation Company, supra, this Court went, at great length, into the question of the effect to be given a judgment of expropriation. In 157 La. on page 605 of the opinion, 102 So. on page 686, the Court said: “The judgment of expropriation itself, apart from the pleadings and the verdict of the jury, leaves nothing for interpretation. There is no ambiguity about it. -It is a conveyance of the land itself, not of a servitude.” This statement by the Court is particularly appropriate to this case. In the Knox case, as in this case, it was contended that the plaintiff in the expropriation proceeding, did not seek to acquire the full ownership of the property but ■ merely a servitude thereon and that therefore the judgment, which granted the full ownership of the land sought to be expropriated, was null. The Court based its conclusion, not on the question as to whether the issue of ownership was raised by the pleadings, as it was in this case, but on the proposition that the judgment had become final and binding and was conclusive. The Court, in announcing its conclusion, 157 La. at page 613 of the opinion, 102 So. at page 689, said:
 

 “We have concluded that the judgment appealed from is correct, and we rest our affirmance of the judgment upon this: That the judgment expropriating the land in full ownership is conclusive of the issue, which might have been but was not raised by the defendant in his answer to the expropriation suit, as to whether the railroad
 
 *959
 
 company had the .right to expropriate the land itself, or should have limited its demand to a right of way, or servitude.
 

 “ ‘Matters once determined by a court of competent jurisdiction, if the judgment has become final, can never again be called into question by the parties or their privies, though the judgment may have been erroneous and liable to certain reversal on appeal.’ Heroman v. Louisiana Institute, 34 La.Ann. 80S. * * *
 

 “ ‘Not only is the judgment of a court conclusive on all questions actually and formally litigated, but likewise as to all questions within the issue, whether formally litigated or not, that is to say, all matters which are impliedly and necessarily within the issue joined, and the determination of which is necessarily included in the judgment.’ Hewett v. Williams,
 
 48
 
 La.Ann. [686], 709, 19 So. 604.
 

 “ ‘Courts of justice, in stating the rule, do not always employ the same language; but where every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented in that trial, the 'matter must be considered as having passed in rem adjudicatam, and the former judgment in such a case is conclusive between the parties.’ City of Aurora v. West, 7 Wall. [82], 102, 19 L.Ed. [42], 49.”
 

 In this case, not only had the judgment of expropriation become final long prior to the acquisition by any of the defendants, but the judgment had also been expressly acquiesced in by the defendants, the Davis heirs, who had availed themselves of the judgment and had received and accepted in full satisfaction thereof the amount awarded them under its terms. In so doing, the Davis heirs clearly ratified everything that had been done from start to finish by the Parish of Jefferson in expropriating the strip of land acquired for the Dupre Cut Canal.
 

 ■ It is not only a moral principle but it is also a legal principle that if a person pays the full value for property, the property should be his. Certainly if the Parish of Jefferson had merely sought to expropriate a servitude instead of the fee of the property owned by the Davis heirs, and suit had been filed for that purpose and, without going to trial thereon, the plaintiff parish and the defendants, the Davis heirs, had reached a settlement of their controversy under which the parish agreed to purchase and the Davis heirs agreed to sell the fee of the property and not merely a servitude and an act of sale conveying the fee for an adequate consideration had been executed, we do not think that the heirs of Davis or their successors in title could, at this late date, successfully contend that the Parish of Jefferson was not authorized to purchase the fee of the property conveyed but merely a servitude on the property.
 

 In addition to the evidence that the heirs of Davis acquiesced in the judgment of expropriation by accepting the benefits thereof several years prior to the date of their sale to the Delaware Louisiana Fur Trapping Co., Inc., the record shows that for a number of years the strip of land
 
 *961
 
 in dispute has been excluded from the assessment rolls. During all these years, some of which elapsed before oil was discovered in the neighborhood, defendants obtained the benefit of the reduction in assessments due to that exclusion. The record also shows that, after oil was discovered, the Parish of Jefferson granted to the Texas Company and the Texas Pipe Line Company a right to use property belonging to the parish, including the land in controversy here, for pipe line and other purposes, all of which shows that the defendants recognize the correctness of plaintiff’s contention that the defendants were not the owners of the land involved in this case.
 

 If the contention of the defendants should be maintained, the doctrine of the sanctity of judgments which this Court, as in the Knox case, has so carefully guarded and preserved, would be consigned to the realm of forgotten things. If the defendants in this case, who had no interest in the property at the time of and for many years after the rendition and recordation of the judgment of expropriation and the acquiescence therein by the defendants in that suit, could, seventeen years after the rendition of the judgment, successfully have that judgment set aside by the courts, the question might well be asked, under what circumstances does a judgment become final and binding under the laws of this State? If the judgment of expropriation is invalid because it awarded the full ownership of the property to the Parish of Jefferson, then it would seem clear that every similar judgment which has ever been rendered by courts of this State (including the judgment reviewed in the Knox case in which full ownership was awarded to the expropriating authority) is null, no matter how old the judgment and regardless of the extent to which it was acquiesced in by the defendants -in the suit in which it was rendered. Neither the laws of this State nor of the United States strike such a judgment with nullity as is demonstrated by the opinion of this Court in the case of New Orleans Land Company v. Board of Commissioners of Orleans Levee District, 171 La. 718, 132 So. 121, whicii was affirmed by the Supreme Court of the United States in a per curiam decision, with authorities, reported in 283 U.S. at page 809, 51 S.Ct. 646, 75 L.Ed. 1427, In that case, this Court and the United States Supreme Court not only upheld the right of the expropriating authority to take full ownership, but also upheld that right even though the property sought to be taken was intended for future sale to pay for the project.
 

 It is our conclusion that under the judgment of expropriation the Parish of Jefferson acquired the full ownership of the property expropriated and not merely a servitude on the property; that the judg- . ment was binding upon the heirs of Davis, and that thereafter they had no right or interest in the land and could convey no right or interest therein to any other person.
 

 Plaintiff contends that the act of donation before McCune, notary, granted the United States only a servitude for perpetual use as a right of way for the' Barataría
 
 *963
 
 Bay Waterway. Defendants contend that by the judgment of expropriation the Parish of Jefferson acquired only a servitude and that the parish transferred that servitude to the United States. In the alternative, the defendants contend that if the Parish of Jefferson acquired the full ownership of the property under the judgment of expropriation, it transferred that ownership to the United States. It is difficult to understand how defendants, even in the alternative, can contend, on the one hand, that the act of donation constituted the granting of a servitude, and on the other hand, contend that it constituted a transfer of the fee. Be that as it may, our finding that the Parish of Jefferson by the judgment of expropriation acquired the full ownership of the property and not merely a servitude thereon disposes of defendants’ primary contention, leaving open for discussion and determination plaintiff’s claim that the notarial act of donation merely evidences the granting of a servitude to the United States, and defendants’ counter claim that the ' notarial act of donation evidences a conveyance of the fee to the United States.
 

 In reaching a conclusion as to the meaning and effect of the act of donation before McCune, notary, the end which the parish sought to accomplish in making the donation must be kept in mind. The only object the parish had in mind in making any donation whatever to the United States was to facilitate the construction of the Dupre Cut- Canal. All that the United States needed for that purpose was an-easement or servitude. T-he United States itself, in House Document No. 200, several times declared that that was all that it required. And it is not denied that all the rights which the United States has ever exercised on the strip of land involved in this suit could be exercised by the granting of a servitude. The Parish-of Jefferson not only had no reason to grant more than a servitude on the property, but it had every reason not to grant the full ownership thereof. It is plain that if the parish granted the full ownership of the property to the United States, the rights of the United States could never be divested except by an act of Congress and the parish would find itself with the United States as the fee owner of a strip of land about eight miles long and 400 feet wide, of which neither the parish nor its inhabitants could ever make any use. If the United States did not proceed with the construction of the canal, the parish itself could not, nor could any one else construct this much needed improvement. To have made the United States the fee owner of the property might in the future retard rather than encourage development for private or public purposes. If, on the other hand, the Parish of Jefferson granted only a servitude on the property, then the parish could itself, or through others, make such use of the strip of land as it pleased, provided that such use did not affect the rights of the United States as the grantee of the servitude.
 

 An examination of the record in this case discloses that throughout the whole transaction the parochial authorities had the desire and intention to transfer to the
 
 *965
 
 United States only a servitude. This is shown by the resolutions adopted by the Police Jury and by the petition and prayer filed by the parish in the expropriation proceeding. The judgment of expropriation makes no mention of the canal to be constructed by the United States and contains a provision recognizing the Parish of Jefferson as acting through its Police Jury as having the full ownership of the property expropriated.
 

 The resolution authorizing the execution of the act before McCune, notary, was adopted by the Police Jury at its meeting held on January 4, 1922, and the portion thereof authorizing the transfer to the United States reads as follows:
 

 “Section 3. Be it further ordained etc., that the President of the Police Jury be and he is hereby authorized and empowered to sign the necessary act of sale and transfer of the right of way obtained by the Parish of Jefferson in the above numbered and entitled cause, to the United States of America, said right of way to be used for the construction of the public navigation canal by the United States of America from Bayou Dupont to Bayou Cutler.”
 

 The granting clause of the notarial act of donation reads as follows:
 

 “Who declared, that for the consideration and on the terms and conditions hereafter expressed, it does by these presents' grant, bargain, donate, convey, transfer, assign and set over unto the United States of America for perpetual use as a right of way for the Barataría Bay Waterway all that land or parcel of land situated in the Parish of Jefferson, State of Louisiana, and described as follows:”
 

 It will thus be seen that the act of donation follows the authorization granted by the resolution of the Police Jury in that it also limits the transfer to use as a right of way for the Barataría Bay Waterway. It will be seen also that in .fixing this limitation the parochial authorities were consistently following the course that they evidently clearly had in mind from the inception of the project. It is to be noted that although the judgment of expropriation recognizes the Parish of. Jefferson, acting through its Police Jury, as having the full ownership of the property, these words were omitted ex industria from the act of donation. Had it been the intention of the parochial authorities to transfer the full ownership of the property, they could, and more normally would have used the same words in the act of donation as were used in the judgment of expropriation. Instead of doing this, the parochial authorities, in the resolution .authorizing the transfer to the United States; specifically set forth that “said right of way (was) to be used for the construction of the public navigation canal by the United States of America from Bayou Dupont to Bayou Cutler.”
 

 Again, had it been the intention of the parochial authorities to transfer the full ownership of the property to the United States, the normal and usual thing for them to have done would have been to cause to be inserted in the act of donation language indicating the transfer of full ownership as clearly as the language which
 
 *967
 
 is found in the judgment of expropriation. Instead of any such language being incorporated in .the act of donation, it is stated in the very granting clause of the act itself that the grant was made “under the terms and conditions hereinafter expressed,” and then are inserted in the act, as the terms and conditions, “for perpetual use as a right of way for Barataria Bay Waterway.”
 

 The case at bar is similar to the case of Noel Estate v. Kansas City Southern & G. R. Co., 187 La. 717, 175 So. 468. A comparison of the instrument construed in that case with the act of donation in this case discloses that the instruments are alike in all essential particulars, except that the act before McCune emphasizes the fact that only the use of the property was granted because that limitation is found in the granting clause, whereas the granting clause contained in the document under review in the Noel case was in the usual words of a sale in fee simple, and the restrictive language was set forth thereafter. In other words, in the present case the fact that the grant was a restrictive one was emphasized by placing the restriction in the granting clause itself and not, as in the Noel Estate case, making a complete grant of ownership and thereafter qualifying that grant. The defendants argue that as the' word “only” appears in the instrument in the Noel case in the phrase reading “said tract of land herein described is sold and conveyed for railroad purposes only,” clearly shows that the use of. the property in that case was to be for :a limited purpose, whereas the word “only” does not appear in the act of donation before McCune, notary. But the omission of the word “only” in the act of donation does not detract from the applicability of the reasoning in the Noel Estate case to this case, because the meaning of the clause of limitation in each case is exactly the same, either with or without the use of the word “only.” That word in the instrument reviewed in the Noel Estate case merely emphasized that a right to use for a particular purpose was granted, whereas, both in fact and in law, no such emphasis was necessary. The emphasis in the notarial act of donation involved in this case was accomplished by placing the limitation in the granting clause itself and not purporting elsewhere in the instrument to transfer the full ownership of the property.
 

 In the Noel Estate case, the Court said, 187 La. at page 724, 175 So. at page 470: “And, again we 'say that this restrictive and limited use of the property is wholly irreconcilable with any theory of an outright conveyance of the property in fee simple.” And, 187 La. on page 723, 175 So. on page 470, the Court said: “In short, the transaction was a sale or a grant of the property for a specific use and purpose. This is inconsistent with any idea of a sale of the title to the land in fee simple. The former is a restrictive or limited sale or grant and the latter is an outright conveyance of title. In the first instance there is a grant of the use of the land and in the second one, a sale of the land itself.”
 

 
 *969
 
 The act of donation contains a warranty clause and other clauses usually found in acts whereby full ownership is transferred. An examination of the opinion of the Noel Estate case will show that, though differently arranged, the same clauses are .found in the instrument there construed. The Court, in that case, said, 187 La. at page 724, 175 So. at page 470: “No sacramental or orthodox form or language is necessary to grant a servitude on realty. It is only necessary that the parties make clear their intention in the instrument to establish one. Rev.Civ.Code, arts. 709, 722.” And, 187 La. on page 723, 175 So. on page 469, the Court said: “It is stated that ‘this grant shall be in perpetuity,’ which means that the grant is subject to limitation. In other words, when land is conveyed in perpetuity, it is a limited grant and not a sale in fee simple.” And the Court finally concluded, 187 La. on page 727, 175 So. on page 471: “It is our opinion that the instrument in question granted a servitude and not the title to the land in fee simple with a resolutory condition.”
 

 A question analogous to the one at bár is discussed in the case of United States v. Michigan, 190 U.S. 379, 23 S.Ct. 742, 47 L.Ed. 1103. That case was cited and relied on by the trial judge in his opinion on the merits. The case involved the question as to whether the United States had granted, in full ownership, to the State of Michigan a strip of land 400 feet wide. The pertinent portion of the act of Congress under consideration there reads as follows:
 

 “That there be, and is hereby, granted to said State, the right of locating a canal' through the public lands, known as the military reservation at the Falls at Saint Mary’s River in said State; and that four hundred feet of land in width extending along the line of such canal be, and the same is hereby granted, to be used by said State, or under the authority thereof for the construction and convenience of such canal, and the appurtenances thereto, and the use thereof is hereby vested in said State forever, for the purposes aforesaid, and no other.” 10 Stat. 35, § 1.
 

 The State of Michigan contended that that constituted a grant in full ownership. The United States contended that the grant was for a specific use which, under-our law, would be the grant of a servitude. The Supreme Court of the United States said, 190 U.S. at page 398 of the opinion, 23 S.Ct. at page 748, 47 L.Ed. 1103, that the right of. way is, by the terms of the act, to be used by the state or under its authority, for the construction or convenience of such canal and the appurtenances thereto; and the use thereof was vested in the state forever, but for the purposes aforesaid and no other. The Court then went on to say, on the same page:'
 

 “The act does not grant an absolute estate in fee simple in the land covered by this right of way. It was in effect a grant upon. condition for a special purpose; that is, in trust for use for the purposes of a canal,, and for no other. The state had no power to alien it and none to put it to any other use or purpose. ‘
 
 *971
 
 Such a grant creates a trust, at least by implication. We have just held in Northern P. R. Co. v. Townsend, 190 U. S. 267, 23 S.Ct. 671, [47 L.Ed. 1044], in reference to a grant of a right of way for the railroad, that it was in effect a grant of ‘a limited fee, made on an implied condition of reverter, in the event that the company ceased to use or retain the land for the purpose for which it was granted.’ ”
 

 And, again, 190 U.S. on page 399, 23 S.Ct. on page 748, 47 L.Ed. 1103, the Court said:
 

 “In this Federal statute we find the purpose of the United States in granting the land. It was not for the benefit of the state of Michigan, and the state did not thereby receive any beneficial interests in such lands.”
 

 Defendants rely largely upon the cases of Askew v. Vicksburg, S. & P. R. Co., 171 La. 947, 132 So. 510, and Arkansas Improvement Co. v. Kansas City So. Ry. Co., 189 La. 921, 181 So. 445; Amite Gravel & Sand Co. v. Roseland Gravel Co., 148 La. 704, 87 So. 718. But those cases are not applicable to this case. Neither in the one nor in the other did the instrument under review employ any such words as are found in the notarial act of donation.
 

 There is a clear distinction under our law between ownership and the right to use, which is a servitude. This distinction is so well recognized that no citation of authorities is required to support the statement.
 

 Defendants also lay great stress on the case of Benedict v. City of New Orleans, 115 La. 645, 39 So. 792, 796, contending that the Court held in that case that the words “perpetual free use” imported ownership. Defendants particularly rely on the following quotation, found in 115 La. on page 656 of the opinion, 39 So. on page 796: “True, the state is made part owner of the building, for to have the perpetual free use of thing is to be pro tanto its owner (Civ.Code, articles 490-492, 494, 626, 633, 637, 638); * * *
 

 The Court, in that case, was considering the statute granting to the State of Louisiana the perpetual use of portions of the new courthouse building in New Orleans. The statement in the Court’s opinion that the State was made the “part owner,” and the further statement in the opinion that “to have the perpetual free use of thing is to be pro tanto its owner” clearly indicate that the Court did not mean to hold that the State was the full owner of the portions of the building of which it had the free perpetual use. The clear intendment of the Court was that the language used was to be construed in accordance with the codal articles cited in its support.
 

 Articles 490, 491, 492 and 494 deal with ownership and its dismemberment. Articles 626, 633, 637 and 638 deal with the servitudes of use and usufruct. So it appears to be clear that what the Court meant by the language above quoted was that to the extent that portions of the building were set apart for the use of the State, the ownership was dismember
 
 *973
 
 ed and that the State had the perpetual servitude of use of such portions and the City had the remainder of the ownership.
 

 In addition to the Askew, Arkansas Improvement Company and Benedict cases, the defendants have cited a number of cases in support of their contentions. None of these authorities derogate from the legal principles which we have found to be applicable to the issues raised in this case.
 

 Another defense, pleaded in the alternative in the answers, is that plaintiff is estopped to assert any right or claim in or to the property in dispute. The grounds of the alleged estoppel are, first, that it was the intent both of the Parish of Jefferson and of the United States government that the parish, acting as its agent, would acquire the property for the government and that the notarial act of donation was executed for the purpose of carrying out the intention of the parties, and, second, that the Parish of Jefferson made no claim of ownership until oil was discovered on adjacent property.
 

 So far as the first ground of the alleged estoppel is concerned, it is to be observed that any intention of the United States could not and was not controlling on the Parish of Jefferson. The United States itself clearly recognized that it had no power to require the Parish of Jefferson to make a voluntary transfer of the property. This is shown by the provisions of House Document No. 200, which merely imposes as a condition for expending the appropriation for the navigation canal that the land or easements be transferred to the United States without cost, thereby leaving it entirely to the Parish of Jefferson as a purely voluntary matter, whether or not and to what extent the parish would comply with the condition imposed.
 

 The petition filed in the expropriation suit shows that while the contemplated construction of the navigation canal was referred to, the Parish of Jefferson did not limit its demand to the canal which it was then contemplated the United States would construct. And all these questions are precluded by the judgment of expropriation which awarded the Parish of Jefferson the full ownership of the property. That judgment is binding not only on the defendants in that suit, but also upon the defendants in this suit as their successors in title.
 

 So far as the second ground of the alleged estoppel is concerned, no law has been cited, and we know of none, providing that where a party acquires the ownership of property by a recorded deed or judgment, he loses his rights unless he constantly and repeatedly asserts such rights. The judgment of expropriation, whereby the Parish of Jefferson acquired the full ownership of the property, was recorded in the conveyance records of the Parish of Jefferson many years prior to the acquisition of the rights claimed by the defendants. The judgment of expropriation itself was an assertion of ownership by the Parish of Jefferson. Its recordation constituted not only notice, but also another assertion of such ownership. The execution of the notarial act of dona
 
 *975
 
 tion was a further assertion of ownership. From the date of its acquisition of the property by the judgment of expropriation, up to and until it granted a mineral lease to Langridge in 1935, the Parish of Jefferson has asserted and re-asserted its claim of ownership to the property in dispute.
 

 Lastly, the essential elements constituting estoppel are wholly absent from this case. Defendants make no claim that as a result of any activity or inactivity of the Parish of Jefferson they were induced to change their position, or were in any wise prejudiced, or that they failed to do or omit to do anything they otherwise would have done. The pleas of estoppel were properly overruled.
 

 A further contention of defendants is that there is no judgment of expropriation before the Court for the reason that as the original judgment was lost neither the copy of the judgment taken from the minutes of' the court nor the copy of the judgment taken 1 from the conveyance records of the parish was admissible in evidence. There is no force in the contention. The record of the expropriation suit was lost, as well as certain other instruments. Plaintiff met the situation caused by the loss of the original documents by supplying copies of the documents, having laid the proper foundation for the admission of such secondary evidence. The copies of the lost documents were properly admitted in evidence. Civ.Code, arts. 2269, 2270, 2280.
 

 Defendants’ final contention is that the judgment in this case should limit the right of the Parish of Jefferson to the use of the property only for the purpose of a navigation canal. The evidence discloses that the strip of land in dispute runs through a portion of the producing oil field known- as the “Lafitte Oil Field.” The evidence also discloses that there are producing wells located on each side of and off the strip of land, from which the defendants are deriving all the benefits. In these circumstances, if defendants’ contentions should prevail and the Parish of Jefferson be prohibited from producing or authorizing the production of oil from the strip of land in dispute, the defendants, by their wells located on the adjacent lands, can drain from under plaintiff’s property all the oil that may be under the property.
 

 Defendants’ contention is merely a repetition in another form of their- contention that the Parish of Jefferson acquired only a servitude by the judgment of expropriation. In disposing of this contention we have found that under the judgment of expropriation the Parish of Jefferson acquired the full ownership of the land in dispute. As defined by Article 488 of the Civil Code: “Ownership is the right by which a thing belongs to some one in particular, to the exclusion of all other persons.”
 

 What defendants are asking under their contention is that this Court declare that the full ownership of the parish is not the right by which the land belongs to the parish in particular and to the exclusion of all others, but is an ownership, elements of which are vested in other persons. This
 
 *977
 
 the Court can not do without violating the plain letter of the codal article.
 

 Defendants’ contention is not only contrary to the provisions-of the codal article, but it is also contrary to the general law as set forth in Ruling Case Law, volume 10, Eminent Domain, section 202, p. 240, as follows: “When land has been acquired for the public use in fee simple unconditional, either by the exercise of the power of eminent domain or by purchase, the former owners retained no rights in the land and the public use may.be abandoned, or the land may be ■ devoted to a different use without any impairment of the estate acquired or any reversion to the former owners.” And: “Where land is condemned and the fee is taken this includes all appurtenances such as water over the land, buildings on it, and underlying minerals.” Corpus Juris, volume 20, Eminent Domain, section 583, p. 1227. Even where the condemnor takes only an easement or servitude, “the property may be applied to a different use where the owner has received the full market value of the land or upon payment of additional compensation to the owner of the fee, where the different use is also a public use.” Corpus Juris, volume 20, Eminent Domain, section 584, pp. 1227, 1228;
 

 As the defendants in this case base their claims to the land in dispute on acquisitions from the heirs of Samuel Davis long after the rendition and recordation of the judgment of expropriation, the above principles of law are as binding on defendants as they are upon the heirs of Davis who were the defendants in the expropriation suit.
 

 We find no warrant for incorporating in the judgment appealed from any provision restricting the use by the parish of the land in dispute. The judgment itself reserves all rights to the United States under the act of donation before McCune, notary.
 

 Defendants assert that if the judgment appealed from be affirmed, it will destroy their rights and titles in and to the land in dispute and deprive them of the opportunity to try with the United States the effect and validity of such rights and titles and that they will, therefore, be deprived of their day in court and of their property rights without hearing in violation of the due process and equal protection clauses of the Federal and State Constitutions. U.S.C.A. Const. Amend. 14; Const. La.1921, art. 1, §§ 2, 6. Obviously, if the judgment complained of be correct, defendants have-no rights or titles
 
 to contest
 
 with the United States. If defendants’ rights and titles in and to the property in dispute are inferior to those of the plaintiff, they should be so adjudged. To sustain defendants’ objection that the plaintiff’s suit, even though plaintiff’s rights and titles are superior to theirs, can not be maintained, would be to deprive plaintiff of its day in court and of its property rights in violation of the due process and equal protection clauses of the Federal and State Constitutions.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 
 *979
 
 O’NIELL, C. J., and LAND, J., dissent.
 

 ODOM, J., dissents and hands down reasons.