Plaintiff alleged he is the owner of the South three-fourths of the South Half of SE 1/4, Section 27, Township 20 North, Range 7 West, containing 60 acres more or less. That he has been for more than one year, and is at the present time, in actual physical possession of the above described property as owner of the same in its entirety free from any servitude or any encumbrance thereon. He avers that he is informed that H.J. Wilder, Mrs. Annie Norton and R.W. Norton, Jr. (Heirs of R.W. Norton, deceased), G.G. Nesbitt, Jr., and H.C. Cate claim to be co-owners of a mineral servitude on the above described land, consisting of one-half of all the minerals in, on and under it, which servitude was granted in a mineral sale from J.B. Baker to H.J. Wilder of date December 3, 1928.
Plaintiff further alleged that said servitude has expired and become extinguished by non-usage for more than ten years. He alleged that the above named claimants have refused to relinquish or quitclaim to him the extinguished servitude and are attempting to assert ownership over the same; that their claim operates as a cloud on the title of petitioner and that he is entitled to a decree cancelling and annulling said servitude because of non-usage for a period of more than ten years.
Plaintiff prayed for judgment in accordance with the allegations of his petition, that is, that he be decreed the owner of the land free and clear of any claims of said defendants to any interest in the minerals in, on and under or that may be produced from said land and that the servitude granted by J.B. Baker to H.J. Wilder in 1928 be adjudged to have been lost by ten years of non-usage. He further prayed for general and equitable relief.
Only three of the defendants answered the suit, viz., Mrs. Annie Norton, R.W. Norton, Jr., and G.G. Nesbitt, Jr. Their answer is as follows:
"1. These defendants admit that plaintiff is the last record owner of the surface rights in and to the land described in Article 1 of plaintiff's petition, but they deny that plaintiff is the sole owner of the oil, gas and other minerals in, on and under and that may be produced from said land, and, on information and belief, deny that plaintiff is the true and lawful owner of the surface rights to or any interest in said land, and allege that the purported deed to plaintiff, which appears of record, is a sham and a simulation.
"2. These defendants deny that plaintiff has been for more than a year, in actual physical possession of said land as the owner thereof; that plaintiff is in possession, as owner, of the oil, gas and other minerals in, on and under and that may be produced from said land; and that said land is free from any servitude or encumbrance thereof, as will more fully appear hereinafter.
"3. These defendants admit that they own and claim to be the owners of fractional parts of the mineral servitude described in Article 3 of plaintiff's petition, as will more fully appear hereinafter. These defendants, for lack of sufficient information to justify a belief in regard thereto, deny that H.J. Wilder and H.C. Cate claim to be co-owners with these defendants of said mineral servitude.
"4. These defendants deny the allegations in Article 4 of plaintiff's petition.
"5. These defendants deny the allegations in Article 5 of plaintiff's petition, except that they admit that they have refused to make relinquishment or quitclaim to plaintiff whatsoever. *Page 831 
"6. These defendants admit that Mrs. Annie Norton and Richard W. Norton, Jr., are residents of Bexar County, Texas, and that G.G. Nesbitt, Jr., is a resident of Caddo Parish, Louisiana. These defendants, for lack of sufficient information to justify a belief in regard thereto, deny that H.J. Wilder is a resident of Tyler, Texas, and that H.C. Cate is a resident of Houston, Texas. These defendants further aver that Mrs. Annie Norton is the surviving widow in community of Richard W. Norton, Sr., deceased, and that Richard W. Norton, Jr., is the sole heir of the said Richard W. Norton, Sr., deceased.
"7. These defendants admit the allegations in Article 7 of plaintiff's petition, except for lack of sufficient information to justify a belief in regard thereto, they deny that it is necessary that a curator ad hoc be appointed to represent H.J. Wilder and H.C. Cate, whose legal residences are unknown to these defendants.
"8. Further answering, these defendants show that they are the true and lawful owners of the following undivided interests in the oil, gas and other minerals in, on and under and that may be produced from the land described in Article 1 of plaintiff's petition, to-wit:
Mrs. Annie Norton 3/32 interest
Richard W. Norton, Jr. 3/32 interest
G.G. Nesbitt, Jr. 1/16 interest
all of which will more fully appear from the allegations hereinafter made.
"9. That on December 3, 1928, J.B. Baker, husband of Mattie Fuller, who was at that time the owner of the S 3/4 of the S 1/2 of the SE 1/4, Section 27, Township 20 North, Range 7 West, Claiborne Parish, Louisiana, and through whom plaintiff herein has his only claim to the land described in Article 1 of plaintiff's petition, conveyed to H.J. Wilder, husband of Marjorie Johnson, an undivided one-half interest in the oil, gas and other minerals in and under said tract of land, subject to an oil and gas lease in favor of J.A. Wilder then in existence, which said mineral deed was filed for record in the Conveyance Records of said Parish on December 4, 1928, and recorded in Book 59, page 382 of said records.
"10. That on December 11, 1928, the said H.J. Wilder, husband of Marjorie Johnson, who was at that time the sole owner of the servitude hereinabove described in Article 9, conveyed to G.G. Nesbitt, husband of Sallie Land, an undivided one-fourth interest in the oil, gas and other minerals in and under the above described tract of land, subject to said lease to J.A. Wilder, which said mineral deed was filed for record in the Conveyance Records of said Parish on December 12, 1928, and recorded in Book 59, page 396 of said records.
"11. That on December 13, 1928, the said G.G. Nesbitt, husband of Sallie Land, who was at that time the sole owner of the mineral interest hereinabove described in Article 10, conveyed to R.W. Norton (Richard W. Norton, Sr.), husband of Annie Norton, an undivided three-sixteenths interest in the oil, gas and other minerals in and under the above described tract of land, subject to said lease to J.A. Wilder, which said mineral deed was filed for record in the Conveyance Records of said Parish on December 15, 1928, and recorded in Book 59, page 406 of said records.
"12. That the said R.W. Norton died intestate on July 17, 1940, survived by his widow in community, Mrs. Annie Norton, and leaving as his sole and only heir his son, Richard W. Norton, Jr.; that the said Mrs. Annie Norton has renounced her rights as usufructuary; and that she and the said Richard W. Norton, Jr., have filed a petition in the First Judicial District Court in and for Caddo Parish, Louisiana, praying that the said Richard W. Norton, Jr., be recognized as sole heir and that, after the payment of the inheritance tax due by him, he be placed in possession of all of the property belonging to the said R.W. Norton at the time of his death, but that, at this date, no judgment has been rendered thereon.
"13. That on April 29, 1931, the said G.G. Nesbitt, husband of Sallie Land, who was at that time the sole owner of one-fourth of the mineral interest hereinabove described in Article 10, conveyed to G.G. Nesbitt, Jr., husband of Sunshine Johnson, all of his right, title and interest, being an undivided 1/16th interest, in and to said oil, gas and other minerals in and under the above described tract of land, which said mineral deed was filed for record in the Conveyance Records of said Parish on April 30, 1931, and recorded in Book 83, page 474 of said records.
"14. That on April 20, 1935, R.E. Baker, J.B. Baker, A.J. Hodges, D.L. Perkins, E.G. Morehead, W.J. Hobby, H.J. Wilder, J.C. Palmer, H.C. Cate, G.G. Nesbitt, Jr., and R.W. Norton executed an oil and gas lease in favor of F. Lee Watson, with a *Page 832 
primary term of ten years, covering the S 3/4th of the S 1/2 of SE 1/4 of Section 27, SE 1/4 of NE 1/4 and NE 1/4 of SE 1/4 of Section 34 and W 1/2 of NW 1/4 of SW 1/4 of Section 35, all in Township 20 North, Range 7 West, Claiborne Parish, Louisiana, and containing 160 acres, more or less, which said lease was filed for record in the Conveyance Records of said Parish on August 24, 1935, and recorded in Book 90, page 548 of said records. That a certified copy of said lease is attached hereto and said lease is made a part hereof by reference.
"15. That at the time of the execution of the oil and gas lease hereinabove described in Article 14: (1) The said R.E. Baker was the owner of the surface rights and an undivided one-fourth interest in the oil, gas and other minerals in and under the land described in Article 1 of plaintiff's petition, under a deed from J.B. Baker, husband of Mattie Fuller, to the said R.E. Baker, dated September 26, 1929, and filed for record in the Conveyance Records of Claiborne Parish, Louisiana on the same date and recorded in Book 72, page 177 of said records; (2) the said J.B. Baker was the last record owner of the surface rights and an undivided interest in the oil, gas and other minerals in and under the remaining 100 acres described in said lease; (3) the said R.W. Norton was the owner of an undivided 3/16 interest in the oil, gas and other minerals in and under 60 acres covered by said lease, namely, the S 3/4 of the S 1/2 of SE 1/4 of Section 27, Township 20 North, Range 7 West; (4) the said G.G. Nesbitt, Jr., was the owner of an undivided 1/16 interest in the oil, gas and other minerals in and under 60 acres covered by said lease, namely, the S 3/4 of the S 1/2 of SE 1/4 of Section 27, said Township and Range; and (5) the other lessors were record owners of various undivided interests in the oil, gas and other minerals in and under various parts of the 160 acres covered by said lease, as will more fully appear from the Conveyance Records of said Parish.
"16. That on November 15, 1935, R.E. Baker (the owner of the surface rights and an undivided one-fourth interest in the oil, gas and other minerals), E.G. Morehead (the owner of an undivided 3/64 interest in the oil, gas and other minerals) and Brooks Van Horn (the owner of an undivided 1/64 interest in the oil, gas and other minerals), executed a `co-lessor's agreement' in favor of F. Lee Watson in which they, as co-owners of the minerals in and under the S 3/4 of the S 1/2 of the SE 1/4 of Section 27, Township 20 North, Range 7 West, Claiborne Parish, Louisiana, joined and concurred in the oil and gas lease dated April 20, 1935, from the said R.E. Baker et al to the said F. Lee Watson hereinabove described in Article 14, which said `co-lessor's agreement' was filed for record in the Conveyance Records of said Parish on November 19, 1933, and recorded in Book 78, page 55 of said records. That a certified copy of said `co-lessor's agreement' is attached hereto and said `co-lessor's agreement' is made a part hereof by reference.
"17. That the oil and gas lease hereinabove described in Article 14 and the `co-lessor's agreement' hereinabove described in Article 16 were executed by the aforesaid lessors and lessee pursuant to an agreement between them to the effect that the entire bonus would be paid to R.E. Baker and J.B. Baker, the landowners, and that said landowners would be joined in the execution of said lease by their co-owners of the oil, gas and other minerals in and under the leased premises, without any part of the bonus being paid to said mineral owners, for the reason that it was contemplated, believed and intended that the execution of said lease by said parties under such circumstances would have the effect of an acknowledgment on the part of the landowners of the existence of the mineral rights of the other lessors for the purpose of interrupting the running of prescription under Louisiana Revised Civil Code, Article 3546, against said mineral rights.
"18. That the said R.E. Baker executed the aforesaid oil and gas lease and the aforesaid `co-lessor's agreement' with the intention and for the purpose of acknowledging the existence of the mineral rights of the other parties who have signed said documents as co-lessors with the said R.E. Baker and to interrupt the running of prescription under Article 3546 of the Revised Civil Code against said mineral rights, and that, in consideration therefor, he received the part of the bonus stipulated in said lease that would have been paid to the owners of said mineral rights except for their agreement that it be paid to the landowner in consideration of his act in acknowledging their mineral rights for the purpose of interrupting the running of prescription against them. *Page 833 
"19. That the Arkansas-Louisiana Gas Company became the owner of said oil and gas lease from the said R.E. Baker et al, to the said F. Lee Watson hereinabove described in Article 14, insofar as said lease covered the S 3/4 of the SE 1/4 of SE 1/4 of Section 27, Township 20 North, Range 7 West, under an assignment from F. Lee Watson, dated October 18, 1935, which said assignment was filed for record in the Conveyance Records of said Parish on December 4, 1935, and recorded in Book 94, page 179 of said Records, and that said lease, insofar as it covered the said 30-acre tract, was in full force and effect at the time of the filing of plaintiff's petition, by virtue of the payment of the delay rentals stipulated in said lease each year and the acceptance thereof by all parties, including the said R.E. Baker and the defendants in whose favor and behalf this answer is filed.
"20. That in the event it should be held that the running of prescription under Article 3546 of the Revised Civil Code against the mineral rights of these defendants, more particularly hereinabove described in Article 8, was not interrupted by the acts of R.E. Baker in executing the aforesaid oil and gas lease and co-lessor's agreement, and of accepting the parts of the bonus to which his mineral co-owners were entitled, then, in the alternative, these defendants plead that the acts of R.E. Baker in executing said lease and in accepting these defendants' part of the bonus paid by the lessee for said lease constituted an agreement between him and these defendants that the course or running of said prescription against the said mineral rights of these defendants be broken into, hindered and stopped.
"21. That plaintiff has no right, claim or interest in the land described in Article 1 of his petition except such right, claim and interest as he purported to acquire under the deed from R.E. Baker to plaintiff, dated January 31, 1939, which deed was filed for record in the Conveyance Records of Claiborne Parish, Louisiana, on January 31, 1939, and recorded in Book 106, page 429 of said Records.
"22. That all of the hereinabove described mineral deeds and the hereinabove described oil and gas lease, `co-lessor's agreement' and assignment were filed and recorded in the Conveyance Records of Claiborne Parish, Louisiana, prior to the execution and filing for record of the purported deed from R.E. Baker to H.G. Baker hereinabove described in Article 21, and that if the said H.G. Baker, plaintiff herein, acquired any rights whatever under said deed, he acquired such rights with both constructive and actual notice of the fact that his vendor had joined his co-owners of the minerals in the execution of a lease on April 20, 1935, with a primary term of ten years from that date.
"23. And now, assuming the position of plaintiffs in reconvention, these defendants, as plaintiffs in reconvention, respectfully show that, because of the facts hereinabove alleged, their mineral interests hereinabove described in Article 8 are in full force and effect and, in no event, will be lost through non-use prior to April 20, 1945.
"24. That defendant in reconvention has slandered the title of these plaintiffs in reconvention to their aforesaid mineral interests by publicly asserting that their mineral rights have been extinguished and are no longer a valid servitude on the land described in Article 1 of the petition filed herein by defendant in reconvention.
"Wherefore, the said Mrs. Annie Norton, Richard W. Norton and G.G. Nesbitt, Jr., pray that the demands of H.G. Baker, plaintiff herein, be rejected at his cost. The said Mrs. Annie Norton, Richard W. Norton, Jr., and G.G. Nesbitt, Jr., further pray that there be judgment herein in reconvention in their favor and against the said H.G. Baker decreeing that their mineral interests hereinabove described in Article 8 are in full force and effect and constitute a valid servitude on the land described in Article 1 of the said H.G. Baker's petition herein, and enjoining the said H.G. Baker from slandering their title to said mineral interests, said injunction to remain in full force and effect until April 20, 1945. The said Mrs. Annie Norton, Richard W. Norton, Jr., and G.G. Nesbitt, Jr., further pray for all general and equitable relief."
H.J. Wilder and H.C. Cate were alleged to be absentees and a curator ad hoc appointed to represent them. He filed an answer denying the allegations of plaintiff's petition for want of information and no further appearance was made.
After trial below on the issues raised by the pleadings, the lower court rendered judgment for plaintiff as prayed for. Three of the defendants, namely, Mrs. Annie Norton, R.W. Norton, Jr., and G.G. Nesbitt, Jr., have perfected an appeal from that judgment. *Page 834 
In this court defendants contend that plaintiff's suit is not a jactitation suit but is one to cancel a cloud on plaintiff's title, citing Exchange National Bank v. Head, 155 La. 309, 99 So. 272; Bodcaw Lumber Company v. Kendall, 161 La. 337, 108 So. 664, and Parish of Jefferson v. Texas Company, 192 La. 934,189 So. 580; and that the burden of proof is on plaintiff the same as if the suit were a petitory action. They then contend that plaintiff has no proof that he is the owner of the land involved in this suit. Plaintiff contends that it is a jactitation suit which has been converted into a petitory action by the answer of defendants wherein they set up title in themselves to the minerals claimed by them and pray that they be declared the owners thereof. They allege the title claimed by plaintiff under the deed from R.E. Baker to plaintiff was a simulation.
While we are of the opinion plaintiff's contention is correct, it is immaterial which of the two contentions are correct since it is our opinion that the plaintiff has proved he is the owner of the land involved. The deed from R.E. Baker to H.G. Baker is a notarial deed reciting a consideration of $1,250, of which $350 is cash in hand paid and three notes of $300 each due in one, two and three years thereafter. It is dated December 31, 1939. A cancelled check of the same date is in the record, signed by H.G. Baker and made payable to R.E. Baker in the sum of $350, with a notation on the check showing it to be the cash portion of the purchase price of the land involved in this suit.
This fact alone disproves the charge that the deed from R.E. Baker to plaintiff was a simulation and sham. The other testimony, we think, shows the manner the credit portion of the purchase price was handled. The deed is translative of property and the property is in the possession of plaintiff and had been for more than a year when this suit was filed and whether or not the credit part of the purchase price was ever paid could not affect the validity of the transfer to plaintiff until the property was taken away from him by foreclosure or otherwise, which has not happened.
Defendants' title to the minerals they claim in this suit dates back to the sale by J.B. Baker to H.J. Wilder of one-half of the minerals in, on and under the land involved here of date December 3, 1928, and since no usage was made of such servitude it ran out or prescribed for non-usage on December 3, 1938, unless the acts of the fee-owner or owners of the land caused the interruption of the ten-year prescription.
On September 26, 1929, J.B. Baker conveyed to R.E. Baker the land involved in this suit. On August 24, 1935, there was filed for record in Claiborne Parish, Louisiana, an oil and gas lease dated April 20, 1935, covering the sixty acres of land involved here and other lands owned in fee by J.B. Baker. It provided for a primary term of ten years with annual delay rentals of $1 per year per acre. The consideration of this lease was a cash bonus of $16 and the obligation of the lessee to begin the drilling of a well in search of oil or gas within four miles of the leased premises on or before October 20, 1935. The lessee was F. Lee Watson and the lease was signed by J.B. Baker and R.E. Baker, the fee-owners of the land involved in the lease and all the owners of the minerals in, on and under the land, including the defendants in this suit. The landowners, J.B. and R.E. Baker, signed the original printed lease and the mineral owners' signatures were acquired and attached at a later date, however, we are certain that the landowners knew the mineral owners were to sign the same lease.
On November 15, 1935, R.E. Baker, E.G. Morehead and Brooks Van Horn signed a document in favor of F. Lee Watson wherein they stated they had granted to the said Watson a lease dated April 20, 1935, covering the land involved here. In said instrument they referred to themselves as co-owners and co-lessees and do by said act ratify and confirm the lease secured by F. Lee Watson of date April 20, 1935. The purpose of this act was to secure the signatures of E.G. Morehead and Brooks Van Horn who owned some minerals in, on and under the land and who did not sign the original lease. It is clear from their testimony that they refused to sign this document unless R.E. Baker could be induced to sign with them. Their purpose, although not known to R.E. Baker, was to use the instrument for the purpose of interrupting prescription. It must also be borne in mind that neither Morehead nor Van Horn are parties to this suit and they testified they did not consider their mineral interest of sufficient value to justify them in fighting the suit.
On October 18, 1935, F. Lee Watson assigned to the Arkansas-Louisiana Gas Company *Page 835 
his lease, insofar as it covered the E 1/2 of the sixty acres of land involved here and said Company paid the annual delay rentals until 1941 when they dropped the lease. The lease on the other half of the land was dropped and no rentals paid for several years before.
Defendants contend that the acts of plaintiff's author in title above related constitute an interruption of prescription and extend the servitude owned by them until April 20, 1945, the primary term of the joint lease executed April 20, 1935. Such a presumption might be easily arrived at if there were no testimony to explain how and why the lease was executed as a joint lease. However, the record makes it definitely clear that the purpose of the mineral owners was to secure the landowners' signature to a joint lease for the purpose of interrupting prescription. This purpose was kept from the landowner. It is also certain from the testimony in the record that the landowner never intended to extend the life of the outstanding minerals and did not think he was interrupting the prescription then running.
We have carefully studied all the cases dealing with a like subject and are convinced that the intention of the landowner when clearly shown must prevail and that parol testimony is admissible to show the intent and when shown will outweigh the presumption of intent as shown by the co-lessor contract.
The judgment of the lower court is correct and is affirmed with costs. *Page 897